United States District Court
Middle District of Florida
Jacksonville Division

**ELIOTT WILLIAMSON,**

*Plaintiff,*

v.                                                     **NO. 3:24-CV-43-WWB-PDB**

**TRANS UNION LLC &**
**EXPERIAN INFORMATION SOLUTIONS, INC.,**

*Defendants.*

---

## Report and Recommendation[1]

### I.    Overview

In this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, the plaintiff, proceeding without a lawyer, sues Experian Information Solutions, Inc., and Trans Union LLC.[2] D23. He alleges that the defendants removed from his credit report an address he had used for two decades, causing a bank to accuse him of fraud when he applied for a loan, and that Trans Union removed from his credit report a reference to his bankruptcy case and then re-inserted the reference without notifying him. D23.

In pursuit of his demand for injunctive relief, ordinary damages, and punitive damages for those alleged actions, the plaintiff has filed frivolous

---

[1]Citations to page numbers are to page numbers generated by CM/ECF.

[2]The record contains references to "TransUnion" as one word and "Trans Union" as two words. The undersigned refers to "Trans Union" as two words because Trans Union refers to itself in that way. *See, e.g.*, D9 (Trans Union's answer).

motions, has repeatedly violated the rules and a standing order, has cited non-existent cases and rules, has misquoted cases, has misrepresented holdings, and has otherwise acted improperly. Perhaps under the mistaken belief that "the best defense is a good offense," he has responded to an inquiry into his misconduct and a stay of the action pending a decision on a sanction by inundating the Court with more papers—nearly 700 pages—and complaints about defense counsel, a court reporter, and the Court.

Attachment A details the plaintiff's more than 100 violations of the rules and the standing order. Attachment B details his more than 100 citations to cases and rules that do not exist, misquotations, and misrepresentations. Repeated warnings have not worked.

The plaintiff has failed to show cause why a sanction should not be imposed. Carefully considering the record and discerning no lesser sanction appropriate to address misconduct amounting to a flagrant abuse of the judicial process, the undersigned recommends dismissal with prejudice.

## II.   **Operative Complaint**

In the operative complaint, the plaintiff alleges:

Defendants have systematically violated the FCRA by reporting derogatory and inaccurate statements and information relating to Plaintiff's credit history to third parties ("inaccurate information").

Specifically, Defendant Trans Union deleted a bankruptcy from Plaintiff's credit report on December 2, 2022, only to reinsert it on December 14, 2022, without notifying Plaintiff. (**See Exhibit A**).

Defendant Trans Union also unjustly deleted Plaintiff's personal address of 20 years from his credit profile on October 21, 2023, a crucial piece of accurate information, causing further harm and confusion [sic] plaintiff was accused unjustly accused [sic] of fraud (**See Exhibit B**).

Moreover, Defendant Experian negligently removed Plaintiff's accurate address from his credit report without proper verification on October 19, 2023, exacerbating the inaccuracies on Plaintiff's credit profile (**See Exhibit E**).

Despite Plaintiff's repeated attempts to dispute and correct these inaccuracies with both Defendants, neither Trans Union nor Experian have taken appropriate action to rectify the reported information and the inaccurate information still reports currently (**See Exhibit D and Exhibit F**).

D23 at 2–3.

The plaintiff describes the exhibits:

**Exhibit A ...:** Copy of Trans Union's correspondence and Lexis Nexis dated December 2, 2022, deleting the bankruptcy account off Plaintiff's credit report.

**[Exhibit] A2** copy of a pulled credit report from Credit Karma dated 02/23/23 archived dated December 14, 2022, reinserting the bankruptcy account onto Plaintiff's credit report.

**Exhibit B**: Copy of Veridian Credit Union's email denial of banking services and allegation of a fraudulent application to Plaintiff dated October 19, 2023 from information received from [Trans Union].

**Exhibit C**: Copy of credit report from Wallet Hub correspondence dated October 21, 2023, showing [Trans Union] removing Plaintiff's address and other identifying information from the credit report.

**Exhibit D**: [Trans Union's] most recent credit report showing the incorrect address 57 Paggi Ter, Wappinger Falls NY report dated 04/15/2024.

**Exhibit E**: Copy of Plaintiff's telephone dispute with Experian's Credit Check Total dispute report correspondence dated October 19, 2023, removing, or updating plaintiff's social security number and address.

**Exhibit F**: Copy of Mid Florida Credit Union's email unable to verify denial of banking services to Plaintiff from information received from Experian dated October 21, 2023.

**Exhibit G**: Experian previous credit reporting. Showing the incorrect address 57 Paggi Ter, Wappinger Falls NY report dated 03/06/2024.

**Exhibit H and H1**: Screen shot of Experian's attorney and Plaintiff's email conversation dated April 10, 2024, admitting they cannot delete addresses associated with accounts, and inaccurate reporting however plaintiff's twenty year actual address was deleted and was replaced with 57 Paggi Ter, Wappingers Falls, NY an address plaintiff has never resided in.

**Exhibit I**: Experian's reinsertion of Plaintiff's correct address 12183 Captiva Bluff Cir W Jacksonville, FL after the conversation dated 04/15/2024.

D23 at 4–5 (some emphasis omitted).

The plaintiff contends that, through those alleged actions, the defendants violated § 1681i ("Procedure in case of disputed inaccuracy") and Trans Union also violated § 1681e(b) ("Compliance procedures"). D23 at 3. He demands an injunction enjoining the defendants "from engaging in wrongful conduct related to [his] credit information" and compelling them "to use appropriate dispute investigation methods and policies." D23 at 3. He demands ordinary and punitive damages, "fees,"[3] costs, and "any other relief deemed just and proper." D23 at 4.

---

[3]A pro se litigant who is not a lawyer is not entitled to an attorney's fee. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

By demanding an attorney's fee, the plaintiff violated Rule 11(b)(2), Federal Rules of Civil Procedure, to the extent that he could not certify, to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the demand was "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(2).

### III.    Motions for Judgment on the Pleadings

In a motion for judgment on the pleadings, Experian argues that the sole claim against Experian—the § 1681i claim—is barred by a 2023 settlement agreement in which the plaintiff verified the accuracy of a credit file with addresses in the "Your Personal Information" section that included the 57 Paggi Terrace address he now alleges is incorrect and excluded the 12183 Captiva Bluff Circle address he now alleges is correct.[4] D44 at 5–8; *compare* D23 at 5, *with* D43-1 at 4 (¶5), 18; *see also Williamson v. Experian Info. Sols., Inc.*, No. 3:23-cv-128-TJC-MCR (M.D. Fla.) (settled action). Experian further argues that the plaintiff fails to state a claim on which relief can be granted because he fails to allege facts making it plausible that Experian's re-investigation procedures were unreasonable or that any FCRA violation damaged him. D44 at 8–13.

In a separate motion for judgment on the pleadings, Trans Union argues that the plaintiff fails to plead a cognizable claim. D65. For the § 1681i claim, Trans Union argues that omitting an address from a credit report is not an inaccuracy. D65 at 9–10. For the § 1681e(b) claim, Trans Union argues that a reference to the bankruptcy case is not inaccurate because the bankruptcy case belongs to the plaintiff. D65 at 5–7; *see In re Williamson*, No. 3:22-bk-2224-JAB (M.D. Fla. Bkr.). Trans Union also argues that the plaintiff fails to allege that Trans Union removed the reference to the bankruptcy case in response to a complaint or that Trans Union re-inserted the reference into his credit report.

---

[4]The credit report included with the settlement agreement is addressed to the plaintiff at the 12183 Captiva Bluff Circle address, D43-1 at 9, but that address is excluded from the report's "Your Personal Information" section.

D65 at 7–9. Trans Union further argues that the plaintiff's demand for equitable relief is unavailable under the FCRA.[5] D65 at 11–12.

## IV.   Proceedings

### A.   *Before the Hearing on the Latest Order to Show Cause*

Though pro se, the plaintiff is familiar with federal litigation—and the FCRA and this Court in particular—as a frequent FCRA litigant in this district. *See Williamson v. U.S. Bank Nat'l Ass'ns, Elan Fin. Servs., and Chase Bank*, No. 3:20-cv-1318-BJD-MCR; *Williamson v. Equifax Info. Servs., LLC*, No. 3:23-cv-759-BJD-MCR; *Williamson v. Experian Info. Sols., Inc.*, No. 3:23-cv-128-TJC-MCR; *Williamson v. Equifax Info. Servs., LLC*, No. 3:20-cv-1034-BJD-PDB; *Williamson v. G4S Secure Sols. USA, Inc.*, No. 3:20-cv-24-HES-JK; *Williamson v. Equifax Info. Servs., LLC*, No. 3:18-cv-831-MMH-JBT; *Williamson v. Equifax, Experian Info. Sols., Inc., and Trans Union LLC*, No. 6:18-cv-465-CEM-KRS. One action was dismissed because of a pleading

---

[5]Standing under Article III of the United States Constitution is a jurisdictional requirement that can be raised anytime, *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1002 (11th Cir. 2004), including by the court, *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020). "[S]tanding must exist with respect to each claim." *Parker*, 386 F.3d at 1002.

A plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016), *as revised* (May 24, 2016). A "violation of one of the FCRA's procedural requirements may result in no harm." *Id.*

Trans Union has not raised the issue of whether the plaintiff has standing to bring the claim that Trans Union violated § 1681e(b) by removing the reference to the bankruptcy case and then reinserting it without notice. *See* D65. At a hearing, the Court questioned whether the plaintiff had suffered any injury and received no satisfactory answer. *See* D133 at 25–27. If the action proceeds, the issue must be briefed because standing to bring the claim is jurisdictional and may be lacking.

deficiency, *see* No. 3:20-cv-1318; the others ended with settlements.[6] The plaintiff is also familiar with litigation elsewhere. *See* D120 at 84 (the plaintiff's testimony that he has filed lawsuits in other states); *Williamson v. Trans Union LLC*, No. 5:19-cv-141-FL (E.D.N.C.) (FCRA action by the plaintiff in the Eastern District of North Carolina); *Williamson v. Sheriff Tommy Gregory, Cpt. Larry Hamilton, Lt. Josh Baker, Sgt. Eric Watson, Dr. Charles Harden, Grant Porter, Camden Cnty. Sheriff's Dep't, Camden Cnty. Bd. of Comm'rs, David L. Rainer, Willis R. Keene, Jr., Charlene Sears, John Does 1–5, Katherine "Nisi" Zell, and Stephen L. Berry*, No. 2:09-cv-136-LGW-JEG (S.D. Ga.) (detainee civil rights action by the plaintiff in the Southern District of Georgia).[7]

---

[6]Trans Union contends that the plaintiff is a serial litigant and is "attempting to somehow [in this lawsuit] garner monetary settlements against Defendants just like he did in the past." D41 at 1. The undersigned does not analyze whether the parties to the other actions settled to avoid the risk of loss on the merits, the substantial expense of litigation, or both. The cases are cited only to show that the plaintiff is not a federal-court novice and, later in this report and recommendation, to show the plaintiff has spelled his first name one way in this and other civil actions and another way in his bankruptcy petition.

[7]At any stage of a case and on its own, a court may judicially notice a fact that cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)–(d). Though a court need not warn a party before taking judicial notice of a fact, a party is entitled to be heard about the propriety of taking judicial notice because it "bypasses the safeguards" of proving facts with competent evidence in court. *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020). Objecting to a report and recommendation provides an opportunity to be heard. *See id.* at 655.

The Court may judicially notice the fact that the plaintiff in this action was the plaintiff in the other federal actions because that fact cannot be reasonably disputed as readily and accurately determined from a source—Public Access to Court Electronic Records (PACER)—whose accuracy cannot reasonably be questioned.

The plaintiff filed the original complaint in this action in January 2024.[8]
D1. Each defendant answered the complaint. D9, D12.

At the outset, the Court notified counsel and the parties of the Local
Rules and a standing order governing the action, provided the website
addresses for the pages on the Court's website where the Local Rules
(https://www.flmd.uscourts.gov/local-rules) and the standing order
(https://www.flmd.uscourts.gov/judges/wendy-berger) can be viewed, ordered
the parties to read and comply with the Local Rules and the standing order,
and warned the parties, "**Failure to comply with ANY Local Rules or
Court Orders may result in the imposition of sanctions including, but
not limited to, the dismissal of this action or entry of default without
further notice.**" D3. This was the first time in this action that the plaintiff
was expressly told to comply with the rules and the standing order. *See* D3.

In mid-March 2024, the plaintiff and counsel for each defendant met for
a case management conference and, shortly thereafter, filed a case
management report. D16. In the report, the plaintiff and defense counsel
certified that they had read, and were familiar with, the Local Rules. D16 at 8.
They also certified that they had "filed their disclosure statement as required
by" Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03. D16 at 4.
Contrary to his certification, the plaintiff had not filed his statement.

---

[8]Litigants without a lawyer and lawyers not admitted to practice in this Court
must file papers by mailing them, uploading them to an e-portal, or handing them
to a person at the clerk's office. The "Date Filed" on the docket is the day the clerk's
office receives the paper, whether by mail, e-portal, or hand-delivery. The "Date
Filed" is not necessarily the date on the mailing envelope or the signature date. The
clerk's office puts the paper on the docket within 48 hours of receiving the paper. The
undersigned uses the "Date Filed" in this report and recommendation.

In late March 2024, the defendants jointly moved for judgment on the pleadings. D17.

In mid-April 2024, the Court entered a case management and scheduling order establishing a November 2024 deadline for conducting discovery, a December 2024 deadline for participating in mediation, and a June 2025 trial term. D19. The Court warned the parties that it "may deny as untimely all motions to compel filed after the discovery deadline." D19 at 4.

In the case management and scheduling order, the Court again ordered the parties and counsel to comply with the rules and the standing order:

> Counsel and all parties (both represented and *pro se*) shall comply with this Order, with the Federal Rules of Civil Procedure, with the Local Rules of the United States District Court for the Middle District of Florida, with the Administrative Procedures for Case Management/Electronic Case Filing, and with the undersigned's standing orders, including the January 13, 2021 Standing Order, available at https://www.flmd.uscourts.gov/standing-order-judge-berger-revised-local-rules. A copy of the Local Rules and Administrative Procedures may be viewed at http://www.flmd.uscourts.gov.

D19 at 3. This was the second time in this action that the plaintiff was expressly told to comply with the rules and the standing order. *See* D3, D19.

The Court instructed "[a]ny party who has not already filed and served the … [disclosure] certificate [required with the first appearance by Local Rule 3.03]" to "do so within the time required by this order," and warned that if the party did not, "sanctions will be imposed." D19 at 3.

The Court ordered the parties not to file discovery materials unless needed by the Court to decide an issue. D19 at 3.

The Court emphasized Local Rule 3.01(g):

**Certificate of Good Faith Conference** – *Before filing any motion in a civil case, the moving party shall* **confer** *with the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement certifying that the moving party has* **conferred** *with the opposing party, and that the parties have been unable to agree on the resolution of the motion.* Local Rule 3.01(g). A certification to the effect that opposing counsel was unavailable for a conference before filing a motion is insufficient to satisfy the parties' obligation to confer. *See* Local Rule 3.01(g). No certificate is required in a motion for injunctive relief, for judgment on the pleadings, for summary judgment, or to certify a class. Local Rule 3.01(g).

The term "counsel" in Rule 3.01(g) includes *pro se* parties acting as their own counsel, thus requiring movants to confer with *pro se* parties and requiring *pro se* movants to file Rule 3.01(g) certificates. The term "confer" in Rule 3.01(g) requires a substantive conversation *in person or by telephone* in a good faith effort to resolve the motion without court action and does not envision an exchange of ultimatums by fax, letter, or e-mail. Counsel who merely "attempt" to confer have not "conferred." Counsel must respond promptly to inquiries and communications from opposing counsel. Board of Governors of the Florida Bar, *Ideals and Goals of Professionalism*, ¶ 6.10 and *Creed of Professionalism* ¶ 8 (adopted May 16, 1990), *available at* www.floridabar.org (Professional Practice – Henry Latimer Center for Professionalism). The Court will deny motions that fail to include an appropriate, complete Rule 3.01(g) certificate.

D19 at 4–5.

The Court again emphasized the standing order:

**Font Requirement** – In accordance with the January 13, 2021 Standing Order, each pleading, motion, or other paper, excluding an exhibit, an attachment, a transcript, an image, or other addendum, shall be in at least **12-point Arial typeface**, including all indented quotations, footnotes, and endnotes. Failure to comply with this requirement may result in the denial or striking of the offending filing without notice or leave to refile.

D19 at 6.

The Court ordered the confidentiality of settlement discussions:

> **Restrictions on Offers to Compromise** – Evidence of an offer to compromise a claim is not admissible to prove liability for or invalidity of the claim or its amount. Fed. R. Evid. 408 (includes evidence of conduct or statements made in compromise negotiations). All discussion, representations and statements made at the mediation conference are privileged settlement negotiations. Except in a supplemental proceeding to enforce a settlement agreement, nothing related to the mediation conference shall be admitted at trial or be subject to discovery. Fed. R. Evid. 408; Local Rule 4.03(g). A communication between a party and a mediator during a private caucus is also confidential, unless the party tells the mediator that it is not.

D19 at 11.

The Court warned the parties about sanctions for failing to comply with the case management and scheduling order:

> **SANCTIONS** – The Court will impose sanctions on any party or attorney who: … fails to comply with this Order. Sanctions may include but are not limited to an award of reasonable attorney's fees and costs, the striking of pleadings, the entry of default, the dismissal of the case, and a finding of contempt of court. *See* Fed. R. Civ. P. 16(f) and 37; 28 U.S.C. § 1927.

D19 at 12.

A few days later, the Court granted the defendants' motion for judgment on the pleadings only to the extent that the Court ordered the plaintiff to amend the complaint—an improper "shotgun" pleading—to comply with the pleading rules.[9] D21.

---

[9]The pleading rules "require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and

The Court did not dismiss the complaint with prejudice as the defendants had requested, *see* D17 at 15, considering the plaintiff's pro se status and the liberal amendment standard in Rule 15(a)(2), Federal Rules of Civil Procedure, D21 at 2. The Court stayed discovery pending the amended complaint because that pleading would help define discovery's scope under Rule 26(b)(1), Federal Rules of Civil Procedure. D21 at 3. The Court reminded the plaintiff that he had to comply with the standing order, informed him that he had violated Local Rule 3.03 by failing to file a disclosure statement, provided a website address for the page on the Court's website where he could obtain the form for the disclosure statement, ordered him to file a disclosure statement, and directed him to resources for unrepresented litigants. D21 at 2–3. This was the third time in this action that the plaintiff was expressly told to comply with the rules and the standing order, *see* D3, D19, D21, and the first time in this action that the Court expressly directed the plaintiff to resources to help him properly prosecute the action, *see* D21.

---

whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoted authority omitted). Complaints that violate the pleading rules "are often disparagingly referred to as 'shotgun pleadings.'" *Id.* Included in the "four rough types or categories of shotgun pleadings … is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321.

The plaintiff's original complaint was a shotgun pleading because, for example, the second count incorporated all previous paragraphs, including the paragraphs for the first count. *See* D1 ¶26.

In April and May 2024, besides filing three responses, D20, D33, D50, and a reply, D53, the plaintiff filed nineteen motions and other papers and 124 exhibits:

1.  initial disclosures under Rule 26(a)(1), Federal Rules of Civil Procedure, D22;

2.  the amended complaint, D23, with ten exhibits, D23-1 to D23-10;

3.  a motion for summary judgment, D24, with eleven exhibits, D24-1 to D24-11;

4.  a motion for judicial notice, D25, with eleven exhibits, D25-1 to D25-11;

5.  a disclosure statement under Local Rule 3.03, D26;

6.  a motion to compel mediation within 30 to 45 days of an order on the motion, D29;

7.  a "notice of intent to request judicial notice," D37 (capitalization omitted), with thirteen exhibits, D37-1 to D37-13;

8.  a motion for judicial notice, D38, with thirteen exhibits, D38-1 to D38-13;

9.  a motion to amend the case management report, D39, with an exhibit, D39-1;

10. an amended motion to amend the case management report, D45, with an exhibit, D45-1;

11. an amended motion for summary judgment to add new evidence, D46, with thirteen exhibits, D46-1 to D46-13;

12. an amended motion for judicial notice to include new evidence, D47, with thirteen exhibits, D47-1 to D47-13;

13. a motion to consider admitted requests for admission, D49;

14.     an "affidavit of authentication," D51 (capitalization omitted);

15.     a memorandum of law supporting the motion for summary judgment, D52;

16.     a statement of undisputed facts, D54, with twenty-two exhibits, D54-1 to D54-22;

17.     a motion to "show cause" why Experian should not be sanctioned and to file an amended motion for summary judgment, D55, with eight exhibits, D55-1 to D55-8;

18.     a motion to compel compliance with a subpoena and for sanctions, D56, with an exhibit, D56-1; and

19.     a motion to strike Experian's motion for judgment on the pleadings, D57, with seven exhibits, D57-1 to D57-7.

The papers violate the rules, the standing order, or both, *see* Attachment A, and eleven of the papers contain citations to cases that do not exist and other falsities, *see* Attachment B.

In late May 2024, in responding to the plaintiff's motion for summary judgment, Trans Union observed that the plaintiff's "cited cases in support of his position are non-existent[.]" D41 at 2. Trans Union pressed, "Plaintiff's reliance on the foregoing [cases] is impossible because such cases do not exist. Plaintiff's flagrant misrepresentation, along with his threadbare allegations, necessitates denial of summary judgment." D41 at 8.

On the same day, in responding to the plaintiff's motion for summary judgment, Experian observed, "***Significantly, none of the cases Plaintiff cites exist***." D42 at 5. Experian's counsel explained:

> Undersigned counsel performed a diligent search for the cited cases and was unable to find any case to which Plaintiff could possibly be referring.

> Numerous courts have dismissed actions and awarded sanctions against
> parties who submit fictitious cases in briefing, including a pro se
> plaintiff in Missouri. *See Not Again! Two More Cases, Just this Week, of*
> *Hallucinated Citations in Court Filings Leading to Sanctions*,
> LAWSITES, (Feb. 22, 2024), https://www.lawnext.com/2024/02/not-again-
> two-more-cases-just-this-week-of-hallucinated-citations-in-court-
> filings-leading-to-sanctions.html; *see also, e.g.*, *New York lawyers*
> *sanctioned for using fake ChatGPT cases in legal brief*, REUTERS (June
> 26, 2023), https://www.reuters.com/legal/new-york-lawyers-sanctioned-
> using-fake-chatgpt-cases-legal-brief-2023-06-22/.

D42 at 5–6 n.3. The plaintiff replied not by withdrawing the motions but by
arguing that "any case citation errors are inconsequential" because the
defendants' actions "clearly violate" the FCRA, "regardless of specific case
references." D53 at 6.

The Court directed the clerk to remove the plaintiff's initial disclosures
from the docket, again explaining that discovery-related documents should not
be filed on the docket unless the Court needs them to decide an issue brought
to its attention. D27 (citing Fed. R. Civ. P. 5(d)(1)); *see* D19 at 3 (case
management and scheduling order entered before the plaintiff filed his initial
disclosures ordering the parties not to file discovery materials unless needed
by the Court to decide an issue).

The Court denied the motion to compel mediation, D29, because the
motion violated Local Rule 3.01(g), the motion violated the standing order, and
the plaintiff provided no reason for changing the position in the case
management report he signed, D16 at 2, that mediation should occur by
November 2024. D34 at 1. This was the fourth time in this action that the
plaintiff was expressly told to comply with the rules and the standing order.
*See* D3, D19, D21, D34.

The Court denied ten of the plaintiff's other motions without prejudice for failure to comply with the Local Rules, the standing order, or both. D58. For each motion, the Court described the violation. D58 at 2–3. The Court reiterated the notice and order entered at the outset of the action directing attention to the Local Rules and the standing order and reiterated, "**Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice**." D58 (quoting D3). Based on the plaintiff's continued failure to comply with the Local Rules and the standing order, the Court ordered the plaintiff to appear and show cause why sanctions should not be imposed. D58 at 2. This was the fifth time in this action that the plaintiff was expressly told to comply with the rules and the standing order. *See* D3, D19, D21, D34, D58.

The plaintiff appeared before the Court by telephone in early June 2024. D60. During the hearing, the plaintiff violated Local Rule 5.03(c)(7) by addressing defense counsel directly, D133 at 65–66; Local Rule 5.03(c)(9) by referring to defense counsel by first name, D133 at 35; Local Rule 5.03(e)(7) by interrupting, D133 at 10, 29; and Local Rule 5.03(e)(8) by speaking without identifying himself, D133 at 6, 8.

The Court began the hearing by denying a lawyer's motion to specially appear to represent Trans Union, D59, without prejudice for failure to comply with the Local Rules, D133 at 4–5; *see also* D61 at 1 (written order). The Court asked the plaintiff why he had opposed the motion, as indicated in a certificate of conferral under Local Rule 3.01(g). D133 at 5–6. He told the Court that Trans Union's counsel had not conferred with him about the motion. D133 at 6–8. After defense counsel read an email response in which the plaintiff had typed

16

"opposed," the plaintiff told the Court that he had opposed the motion because
he had not understood the relief the lawyer was requesting. D133 at 8–9. Later,
he told the Court that he had opposed the motion because the lawyer gave him
only two choices: oppose or agree. D133 at 12. The Court reiterated that the
conferral process required by Local Rule 3.01(g) requires a back-and-forth
discussion beyond the word "opposed." D133 at 10–13.

The Court asked the plaintiff to explain why he is suing the defendants.
D133 at 13–14. He answered that the defendants had removed his correct
address from his credit reports and that Trans Union had removed and then
re-inserted a reference to his bankruptcy case. D133 at 14–19. He contended
that by removing his correct address, the defendants had inhibited him from
obtaining "funding" from two credit unions and had caused him to be accused
of fraud. D133 at 15–17.

The plaintiff told the Court:

- the 12183 Captiva Bluff Circle address has been his address for
  twenty years, and he has not moved, so he was "pretty sure" he
  knew the "address by heart," D133 at 17, 20, 46;

- the 12183 Captiva Bluff Circle address is his "only address,"
  D133 at 19–20;

- he has only lived in Jacksonville and "duty stations,"[10] and
  "that's it," D133 at 20; and

- the 12183 Captiva Bluff Circle address is the only address that
  should be on his credit report, the other addresses on his credit

---

[10]At one hearing, the plaintiff told the Court that his ex-wife had been in the
military and stationed at Fort Bragg. D120 at 55. At another hearing, the plaintiff
told the Court that he is a Marine. D133 at 17.

report do not belong to him, and he does not know who reported other addresses or from where they had come, D133 at 20.

The plaintiff also told the Court:

- he does not live in Jacksonville, D133 at 22;

- he lives in Colombia, South America, D133 at 22, 68;

- he is retired, D133 at 68;

- he does business in Jacksonville and other places, D133 at 22;

- he is planning and hosting an event in Cartagena, Colombia, as "part of a brand" he is building, D133 at 68–69;

- he is in school and filming a school project, which is why he is hosting the event, D133 at 69; and

- he returned to Jacksonville to take a test to obtain a state license for insurance, D133 at 69.

The Court discussed the number of rules violations and frivolous motions and the Court's busy docket, warned the plaintiff that he was verging on having his action dismissed because of repeatedly violating the rules, observed that he gets some "leeway" and "forgiveness" because he is not a lawyer, and explained that the administration of justice is best served when parties comply with the rules and refrain from filing frivolous motions. D133 at 27–29. He responded that defense counsel had also violated the rules, and his and their rules violations were "equal." D133 at 29–31.

The plaintiff asked what he was supposed to do, D133 at 31, and the Court answered, "You can … prosecute your case fairly, honestly, and with professionalism, because you are, in essence, standing in the shoes of a lawyer representing yourself, and you're expected to comply with the rules," D133 at

18

32. The Court observed that filing "[m]otion after motion after motion" would not get him the relief he demanded. D133 at 32. The Court commented, "I'm listening to what you're saying. I understand what you're saying. I hope that you're listening to what I'm saying and understanding what I'm saying. The litigation can't go on in the manner that it's … been prosecuted so far." D133 at 37. The Court explained that motions violating the rules, whether by the plaintiff or the defendants, would be denied and result in another order to show cause. D133 at 39, 53–54. The Court described the next steps in the litigation and discharged the order to show cause without imposing a sanction. D61; D133 at 89. This was the sixth time in this action that the plaintiff was expressly told to comply with the rules and the standing order. *See* D3, D19, D21, D34, D58, D133.

Within four weeks of the hearing, the plaintiff filed seven more motions and responses and forty-four exhibits:

1.  a motion to compel compliance with a subpoena and for sanctions, D62, with one exhibit, D62-1;

2.  a response in opposition to Experian's motion for judgment on the pleadings, D63, with ten exhibits, D63-1 to D63-10;

3.  a "rebuttal" to Trans Union's motion for judgment on the pleadings, D66 (capitalization omitted), with fourteen exhibits, D66-1 to D66-14;

4.  a response in opposition to Trans Union's motion for the Court to take judicial notice of papers from the plaintiff's bankruptcy case, D67, with fourteen exhibits, D67-1 to D67-14;

5.  a response in opposition to the defendants' motion to stay, D69;

19

6.    a motion for leave to amend his response to Experian's motion for judgment on the pleadings, D70, with one exhibit, D70-1; and

7.    a response in opposition to Trans Union's motion for leave to reply, D72, with four exhibits, D72-1 to D72-4.

The papers violate the Local Rules, the standing order, or both, *see* Attachment A, and five of the papers contain citations to cases that do not exist and other falsities, *see* Attachment B.

In late June 2024, in a motion for leave to reply to the plaintiff's response to Trans Union's motion for judgment on the pleadings, Trans Union pointed out more of the plaintiff's falsities:

> Plaintiff invites the Court to find that the alleged reinsertion of his own bankruptcy is "per se inaccuracy under the FCRA as established in *Losch v. Nationstar LLC*, 995 F.3d 937 (11th Cir. 2021)." *See* ECF No. 66 at 3–4. That is not what the Eleventh Circuit in *Losch* held—and Plaintiff's attempt to misrepresent case law warrants a reply. Plaintiff also mischaracterized other case law … and argued false allegations, such as Trans Union's alleged "admission of [] error during the June 6, 2024, telephonic hearing, where [Trans Union] admitted to reinserting the incorrect address and correct[ed] it only later." *Id*. at 4–6. Trans Union has made no such admissions, and Plaintiff's misrepresentation of the facts is appalling and necessitates clarification.

D71 at 2. Trans Union observed, "Plaintiff cited several other cases that are either non-existent or their holdings are not what Plaintiff represents them to be." D71 at 2 n.1.

In July 2024, the Court denied the defendants' motion to stay discovery, D68 (motion), D73 (order), and, at the defendants' request, D80, without opposition from the plaintiff, D80 at 4, referred the case to the Honorable Monte Richardson to conduct a settlement conference, D81.

Meanwhile, in the span of two days, the plaintiff filed six motions and "statements," and two exhibits:

1. a motion to compel discovery from Experian, D85, with an exhibit, D85-1;

2. a motion to compel discovery from Trans Union, D86, with an exhibit, D86-1;

3. a "statement of material facts" supporting the motion to compel discovery from Experian, D87 (capitalization omitted);

4. a motion for a status conference, D88;

5. a motion to compel depositions of Experian's and Trans Union's high-level executives, D89; and

6. a "statement in support of claim" against Trans Union, D90 (capitalization omitted).

The papers violate the Local Rules, the standing order, or both, *see* Attachment A, and three of the papers contain citations to cases that do not exist and other falsities, *see* Attachment B.

In late September 2024, in a response in opposition to the plaintiff's motion to compel depositions of the defendants' executives, the defendants pointed out more of the plaintiff's falsities:

> Plaintiff's citation to *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987), is inapposite. [Nor is *Avirgan* an Eleventh Circuit case as Plaintiff incorrectly states in his Motion.] While as a general proposition it is true that "top level executives are not immune from deposition," Motion, 2, *Avirgan* does not so hold. *Avirgan* does not address the depositions of high-ranking officials at all and instead analyzes when and whether a court may enter a protective order to prohibit attendance of the press and public at a deposition. *Avirgan*, 118 F.R.D. 253. Neither *Arvirgan* [sic] nor the other cases Plaintiff cites in his Motion support Plaintiff's request to take the depositions of Defendants' high-ranking executives

21

> here. [The *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979), case
> Plaintiff cites actually supports Defendants' position, finding that the
> trial court did not err when it "required plaintiff to depose the other
> employees that Upjohn indicated had more knowledge of the facts before
> deposing [Upjohn's president]."]

D99 at 9 & n.3 (internal footnotes in brackets).

Judge Richardson conducted the settlement conference in October 2024.
D100. The conference ended with an impasse. D100.

Later that month, the Court denied eight pending motions without
prejudice. D104. In the order on the motions, the Court began:

> The Court previously denied eleven motions for failure to comply with
> the Local Rules, the district judge's standing order, or both. [D]58. The
> Court ordered the plaintiff to appear and show cause why sanctions
> should not be imposed for continued failures to comply with the Local
> Rules and the standing order. *Id.* at 2. During the hearing, the Court
> discussed proper procedures, the conferral process, the rules violations,
> and the number of frivolous motions filed. [D]60 at 1–2. The plaintiff
> and counsel for the defendants were present. *Id.* at 1. Following the
> hearing, the Court discharged the order to show cause. [D]61. Despite
> the discussion at the hearing and other orders directing the parties to
> comply with the Local Rules, *see* [D]3, [D]21, [D]34, [D]61, the plaintiff
> and [Trans Union] continue to file non-compliant motions.

D104 at 1.

The Court reminded the parties about Local Rules 1.08 and 3.01(g) and
the standing order and explained the reason for denying each motion:

> The plaintiff's motion to compel compliance with a subpoena and for
> sanctions, [D]62, is denied without prejudice for failure to comply with
> Local Rule 1.08, as amended by the district judge's standing order, and
> Local Rule 3.01(g)(2). As additional, independent grounds for denying
> the motion, the plaintiff fails to include a copy of the subpoena. Although
> the plaintiff states, "A copy of the served subpoena is attached" to the
> motion, [D]62 at 2, it is not. The record contains no evidence that the
> Court issued a subpoena to the non-party as required by Rule 45(a)(2)

and (3), Federal Rules of Civil Procedure. To the extent the plaintiff used the purported "subpoena" included with his previous motion to compel, [D]56-1, that paper is improper because the Court did not issue it. The record contains no evidence of the place where compliance is required. The plaintiff fails to show that service on a "Research Analyst" of the non-party, [D]62-1 at 2, as opposed to the registered agent of the non-party, suffices for proper service under Rule 45(b)(1). And the plaintiff frivolously requests an attorney's fee as a sanction even though he is not an attorney and is representing himself. *See* [D]62 at 4; *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) ("[A] pro se litigant who is not a lawyer is not entitled to attorney's fees." (emphasis omitted)).

Trans Union's motion to take judicial notice, [D]64, is denied without prejudice for failure to comply with Local Rule 3.01(g)(2). Regardless, the Court may sua sponte judicially notice the fact of a bankruptcy and actions within a bankruptcy proceeding, and, if appropriate, will do so in this action with or without a motion. *See* Fed. R. Evid. 201(c)(1) ("The court … may take judicial notice on its own[.]"); *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts."); *accord Bobadilla v. Aurora Loan Servs., LLC*, 478 F. App'x 625, 627 (11th Cir. 2012) (rejecting the argument that the magistrate judge improperly took judicial notice of the appellant's bankruptcy proceedings).

The plaintiff's motion for leave to amend his response to Experian's motion for judgment on the pleadings, [D]70, is denied without prejudice for failure to comply with Local Rule 1.08, as amended by the district judge's standing order, and Local Rule 3.01(g)(2). As an additional, independent ground for denying the motion, the alleged newly discover[ed] evidence will not help the plaintiff. When a court decides a motion for judgment on the pleadings under Rule 12(c), Federal Rules of Civil Procedure, the Court considers only the pleadings. *Hill v. Linahan*, 697 F.2d 1032, 1034 (11th Cir. 1983). The deadline to amend the pleadings expired in April 2024. *See* [D]19 at 1.

Trans Union's motion for leave to file replies, [D]71, is denied without prejudice for failure to comply with Local Rule 3.01(g)(2) and Local Rule 3.01(g)(3). Regardless, if the Court needs additional briefing, it will direct additional briefing.

The plaintiff's motions to compel discovery, [D]85, [D]86, are denied without prejudice for failure to comply with Local Rule 1.08, as amended by the district judge's standing order, Local Rule 3.01(g)(2), and Local Rule 3.01(g)(3). The motions are also denied for failure to comply with Local Rule 3.01(g) because the plaintiff filed the motions before

participating in a substantive discussion about the discovery disputes.
*See* [D]96 at 3–4 (Experian's response to the motion to compel); [D]97 at
18 (Trans Union's response to the motion to compel).

The plaintiff's motion for a status conference, [D]88, is denied without
prejudice for failure to comply with Local Rule 1.08, as amended by the
district judge's standing order, Local Rule 3.01(g)(2), and Local Rule
3.01(g)(3). The motion is also denied for failure to comply with Local
Rule 3.01(g) because the plaintiff filed the motion before conferring with
the defendants about the specific relief requested in the motion. *See*
[D]98 at 2 (the defendants' response to the motion for a status
conference). One of the reasons for wanting a status conference—to
discuss settlement—is now for naught because the parties participated
in a settlement conference. *See* [D]100. If the plaintiff wants the Court
to amend the case management and scheduling order, [D]19, he may
confer with the defendants and then move for that relief.

The plaintiff's motion to compel depositions, [D]89, is denied without
prejudice for failure to comply with Local Rule 1.08, as amended by the
district judge's standing order, and Local Rule 3.01(g)(2). The motion is
also denied for failure to comply with Local Rule 3.01(g) because the
plaintiff filed the motion before participating in a substantive discussion
about the discovery dispute. *See* [D]99 at 9 n.2 (the defendants' response
to the motion to compel depositions). As an additional, independent
ground for denying the motion, the plaintiff fails to show that deposing
high-level executives is appropriate under the circumstances. *See* [D]99.

D104 at 3–5 (emphasis omitted). This was the seventh time in this action that
the plaintiff was expressly told to comply with the rules and the standing order.
*See* D3, D19, D21, D34, D58, D104, D133.

The Court ordered the plaintiff and Trans Union to show cause why
sanctions should not be imposed for failure to comply with the rules. D104 at
5–6. The Court again described resources available to the plaintiff as a litigant
without a lawyer. D104 at 6. This was the second time in this action that the
Court expressly directed the plaintiff to resources to help him properly
prosecute the action. *See* D21, D104.

**B.    *The Latest Order to Show Cause***

In early November 2024, the undersigned began drafting a report and recommendation on the motions for judgment on the pleadings, D44, D65. Based on a then-review of the entire record and its irregularities—especially the plaintiff's citations to non-existent cases, the Court ordered the plaintiff to appear "and show cause why sanctions should not be imposed under Rule 11, Federal Rules of Civil Procedure; the Court's inherent authority; or both" for citing non-existent cases, misquoting cases, misrepresenting case holdings, misspelling his first name in his bankruptcy petition, repeatedly violating the rules, representing that the 12183 Captiva Bluff Circle address used in this action is the only address that should be on his credit account despite using other addresses in other federal cases and acknowledging the accuracy of other addresses in the previous settlement agreement, and appearing to serve or attempting to serve a non-party with a purported subpoena that this Court never issued:

> First, the plaintiff cites non-existent cases, misquotes cases, and misrepresents the holdings of cases. For example:
>
>> —The plaintiff states, "The deposition of a high-ranking corporate official is eminently permissible, indeed essential, when the official possesses 'unique personal knowledge of discoverable information.' *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)." [D]89 at 2. This case includes no such quotation and no such holding.
>>
>> —The plaintiff states, "The Eleventh Circuit has unequivocally held that 'top level executives are not immune from deposition.' *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)." [D]89 at 2–3. This case is not from the Eleventh Circuit and includes no such quotation or holding.
>>
>> —The plaintiff states, "As the Supreme Court held in *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007), the reasonableness of

25

procedures and whether the agency followed them are quintessential questions for the jury." [D]89 at 3–4. This case includes no such holding.

—The plaintiff states, "The Fourth Circuit in *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987), defined 'reckless disregard' as sufficient to establish willful noncompliance." [D]89 at 4. This case analyses neither "reckless" nor "reckless disregard."

—The plaintiff states, "The Eleventh Circuit has consistently held that the scope of discovery under the Federal Rules is broad and that 'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.' *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)." [D]86 at 2. This case is not from the Eleventh Circuit.

—The plaintiff states, "See, e.g., Liguria Foods, Inc. v. Griffith Labs., Inc., 320 F.R.D. 168, 180–82 (N.D. Ga. 2017) (collecting cases and noting that the Eleventh Circuit 'has consistently held that boilerplate objections, particularly those based on vagueness, overbreadth, or undue burden, are improper.')." [D]85 at 3. This case includes no such quotation.

—The plaintiff states, "*S.E.C. v. Merida Capital Partners, LLC*, 2020 WL 1182633, at *2 (S.D. Fla. Mar. 12, 2020) ('A party withholding information on the basis of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."')." [D]85 at 4–5. This case appears not to exist.

—The plaintiff states, "*See, e.g., Cacique, Inc. v. Tropical Cheese Indus., Inc.*, 2008 WL 4936553, at *3 (S.D. Fla. Nov. 14, 2008) ('The mere fact that information may constitute a trade secret does not necessarily shield it from discovery.')." [D]85 at 6. This case appears not to exist.

—The plaintiff states, "Further, the Eleventh Circuit has consistently held that judicial notice should not be taken of facts that could 'improperly interfere with the jury's fact-finding function.' *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)." [D]67 at 3. This case includes no such quotation.

—The plaintiff states, "Trans Union's deletion of Plaintiff's bankruptcy on December 2, 2022 … followed by its reinsertion on December 7, 2022 … without notice, constitutes a procedural inaccuracy in violation of 15 U.S.C. § 1681i(a)(5)(B)(ii). This violation is a per se inaccuracy under the FCRA, as established in *Losch v. Nationstar Mortgage LLC, 995 F.3d 937 (11th Cir. 2021).*" [D]66 at 4. This case includes no such holding.

—The plaintiff states, "As held in *Collins v. Experian Information Solutions, Inc., 775 F.3d 1330 (11th Cir. 2015)*, reporting inaccurate information after notice of a dispute violates the FCRA." [D]66 at 5. This case includes no such holding.

—The plaintiff states, "The Eleventh Circuit has held otherwise in Saenz v. Trans Union, LLC, 621 F. App'x 921, 924 (11th Cir. 2015), clearly establishing a private cause of action for such inaccuracies." [D]66 at 6. This case appears not to exist.

—The plaintiff states, "Further, courts have recognized that inaccurate addresses can significantly impact creditworthiness and access to credit (*see, e.g., Cheeks v. Equifax Information Services LLC, No.1:21-CV-00262-JPB, 2022 WL 4335897 (N.D. Ga. Sept. 19, 2022).*"[11] [D]66 at 6. This case appears not to exist.

—The plaintiff states, "In *Sepulvado v. CSC Credit Services, Inc., 158 F.3d 1227 (11th Cir. 1998)*, the Eleventh Circuit affirmed the availability of injunctive relief under the FCRA to prevent future harm. Plaintiff's request for injunctive relief is therefore appropriate and within the Court's discretion to grant." [D]66 at 7. This case appears not to exist.

—The plaintiff states, "This case is more analogous to *Pinder v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986), where the court held that a release in a prior settlement did not bar a subsequent claim

---

[11]The plaintiff cites "*Cheeks v. Equifax Information Services LLC, No.1:21-CV-00262-JPB, 2022 WL 4335897 (N.D. Ga. Sept. 19, 2022).*" A case with the same name in the same court exists: *Cheeks v. Equifax Info. Servs., LLC, Experian Info. Sols., Inc., and Trans Union LLC*, No. 1:23-cv-05977-LMM (N.D. Ga.). The plaintiff in the real case alleged that the defendants mixed his credit files with a credit file of someone with a different name and social security number. *See* D1 in No. 1:23-cv-05977-LMM. The case does not stand for the proposition for which the plaintiff said it stands, and the court in the case entered no order on September 19, 2022. *See* No. 1:23-cv-05977-LMM.

under the FCRA for new and distinct violations." [D]63 at 4. The case contains no such holding.

—The plaintiff states, "The Eleventh Circuit has consistently strictly construed waivers of FCRA rights to ensure consumer protection. *See e.g., Chastain v. Equifax, Inc.*, 478 F. App'x 614, 617 (11th Cir. 2012)." [D]63 at 4–5. This case appears not to exist.

—The plaintiff states, "As established in *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990), a release cannot bar future claims arising from distinct facts or events." [D]57 at 3. This case does not discuss a release.

—The plaintiff cites "*Clark v. Equifax Information Services LLC*, 2018 WL 1144925 (M.D. Fla. Mar. 2, 2018)." [D]55 at 4. This case appears not to exist.

—The plaintiff cites "*Smith v. Trans Union LLC*, No. 3:22-cv-00123-J-32JRK (M.D. Fla. Jan. 10, 2023)." [D]55 at 4. This case appears not to exist.

—The plaintiff states, "Doe v. Equifax, Case No. 4:21-cv-9012 (S.D. Fla. 2024): In this recent case, the court granted summary judgment in favor of the plaintiff, holding Equifax accountable for repeated violations of the FCRA." [D]46 at 5; *see also* [D]24 at 5. This case appears not to exist.

—The plaintiff states, "In similar cases within the jurisdiction of this court, summary judgment has been granted where consumer reporting agencies have flagrantly violated the FCRA by failing to maintain accurate consumer information and provide timely notifications to consumers regarding changes in their credit reports. For example, in Smith v. Trans Union LLC, Case No. 2:22-cv-1234 (M.D. Fla. 2023), the court ruled in favor of the plaintiff, emphasizing the importance of consumer protection under the FCRA, and holding the defendant accountable for its violations." [D]46 at 5; *see also* [D]24 at 5. This case appears not to exist.

—The plaintiff states, "Furthermore, in Jones v. Experian Information Solutions, Inc., Case No. 3:23-cv-5678 (M.D. Fla. 2023), the court found Experian liable for willfully and negligently failing to maintain accurate consumer information, leading to adverse consequences for the plaintiff. These cases establish a precedent for granting summary judgment in cases

involving FCRA violations by consumer reporting agencies in this
jurisdiction. These cases as well as others demonstrate the courts'
commitment to enforcing the FCRA's requirement of accurate
consumer information and holding consumer reporting agencies
accountable for violations." [D]46 at 5–6; *see also* [D]24 at 5–6.
This case appears not to exist.

These are just examples. The Court has not yet analyzed all cases or
purported cases the plaintiff cites.

Second, the plaintiff spells his legal first name differently in federal
cases. He spells his first name "Eliott" in this and other actions. *See
Williamson v. Equifax Info. Servs., LLC*, No. 3:23-cv-759-BJD-MCR
(M.D. Fla.); *Williamson v. Experian Info. Sols., Inc.*, No. 3:23-cv-128-
TJC-MCR (M.D. Fla.); *Williamson v. U.S. Bank Nat'l Ass'ns etc.*, No.
3:20-cv-1318-BJD-MCR (M.D. Fla.); *Williamson v. Equifax Info. Servs.,
LLC*, No. 3:20-cv-1034-BJD-PDB (M.D. Fla.); *Williamson v. G4S Secure
Sols. USA, Inc.*, No. 3:20-cv-24-HES-JK (M.D. Fla.); *Williamson v.
Equifax Info. Servs., LLC*, No. 3:18-cv-831-MMH-JBT (M.D. Fla.);
*Williamson v. Equifax etc.*, No. 6:18-cv-465-CEM-KRS (M.D. Fla.). But
in his bankruptcy petition, he spells his first name "Elliott." *See In re
Williamson*, No. 3:22-bk-2224-JAB (M.D. Fla. Bkr.). A search of "Eliott
Williamson" in the bankruptcy docket, therefore, will not reveal the
petition filed by "Elliott Williamson."

Third, the plaintiff has repeatedly violated the rules despite having
experience with federal litigation, despite certifying that he has read
and is familiar with the Local Rules, [D]16 at 8, despite receiving
directions to follow the rules, [D]3, [D]21, [D]34, [D]58, [D]60, despite
receiving a warning that his failure to follow the rules could result in
sanctions, [D]3, and despite directing him to resources for pro se
litigants, [D]21 at 3. *See* [D]22, [D]23, [D]24, [D]25, [D]29, [D]37, [D]38,
[D]39, [D]45, [D]46, [D]47, [D]49, [D]55, [D]56, [D]57, [D]62, [D]63,
[D]66, [D]67, [D]69, [D]70, [D]72, [D]85, [D]86, [D]87, [D]88, [D]89.

Fourth, at a hearing before this Court, [D]60, the plaintiff represented
the address he uses in this action—12183 Captiva Bluff Cir. W.,
Jacksonville, FL 32226—has been his address for twenty years and is
the only address that should be on his credit account. But he has used
other addresses in other actions. *See In re Williamson*, No. 3:22-bk-2224-
JAB (M.D. Fla. Bkr.) (using 9951 Atlantic Boulevard, Ste 322 #1008,
Jacksonville, FL 32225); *Williamson v. Equifax Info. Servs., LLC*, No.
3:18-cv-831-MMH-JBT (M.D. Fla.) (using 465 Valmont Ave.,
Fayetteville, NC 28301); *Williamson v. Equifax etc.*, No. 6:18-cv-465-
CEM-KRS (M.D. Fla.) (using 465 Valmont Ave., Fayetteville, NC

28301). He acknowledged the accuracy of other addresses in a settlement agreement. [D]43-1 ¶5 (acknowledgment); [D]43-1 at 18 (listing 57 Paggi Ter., Wappingers Falls, NY 12590-3715; 667 Jamestown Blvd., Apt. 2066, Altamonte Springs, FL 32714-4679; 4460 Hodges Blvd., Apt. 703, Jacksonville, FL 32224-5207; 1317 Edgewater Dr., Apt 113, Orlando, FL 32804-6350; and 1428 NE 151st St., North Miami Beach, FL 33162-5915).

Fifth, the plaintiff appears to have served or attempted to serve a non-party with a purported subpoena that this Court never issued. *See* [D]56-1.

D105 at 1–6.

The Court explained that a court reporter would record the hearing, that either side may present evidence, and that, instead of a written response to the second order to show cause, D104, the plaintiff and Trans Union could respond to that order at the hearing. D105 at 1, 7.

## C.    *The Hearing on the Latest Order to Show Cause*

The Court conducted the hearing in early December 2024. D112. Besides interrupting and raising his voice, the plaintiff violated Local Rule 3.07(a) by failing to label exhibits, *see* D120 at 157–58; Local Rule 5.03(c)(1) by failing to stand when addressing the Court, *see* D120 at 5–6; Local Rule 5.03(c)(5) by failing to state the legal bases for objections, *see* D120 at 128–29, 143–44; Local Rule 5.03(c)(7) by addressing defense counsel directly, D120 at 76, 116–17; Local Rule 5.03(c)(8) by displaying animosity toward the lawyers in the courtroom, *see* D120 at 117 ("Man, y'all are liars"); and Local Rule 5.03(c)(9) by referring to defense counsel by first name, *see, e.g.*, D120 at 86, 88, 129. The plaintiff also disclosed confidential discussions from the settlement conference with Judge Richardson. *See* D120 at 61, 136. The Court again explained the confidential nature of settlement discussions and directed the plaintiff not to

disclose what was discussed at the conference. D120 at 136–37; *see also* D19 at
11 (case management and scheduling order directing the parties to maintain
the confidentiality of settlement discussions).

After Trans Union's lawyer addressed the order to show cause against
Trans Union, D120 at 4–5, the plaintiff was placed under oath, D120 at 5, and
presented testimony and argument in response to the order to show cause,
beginning with the misspelling of his first name in his bankruptcy petition,
D120 at 8–13. He testified he had not known he misspelled his name until the
order to show cause. D120 at 12. He testified, "Honestly, I just noticed [the
misspelling] now. I didn't -- I really didn't notice it. Like, I missed it and Ms.
Abbot (ph.)[12] missed it. So, again, I really didn't notice it at all."[13] D120 at 12.

The plaintiff addressed whether he had served or tried to serve a
non-party with a purported subpoena not issued by the Court, which he had
filed with his motion to compel compliance with the subpoena, *see* D56-1; D120
at 13–25. He testified that he had served two court-issued subpoenas and
provided the Court copies of them. D120 at 13–17. The Court handed the
purported subpoena to the plaintiff, D56-1, and asked whether he had served
it on a non-party, D120 at 17. His answer was unclear. D120 at 17–25.

The plaintiff addressed the non-existent cases and other falsities in his
papers. D120 at 26–39. He apologized, admitted error, and testified that he

---

[12]Doreen Abbott served as the trustee in the bankruptcy case. *See* D5 at 1 in
*In re Williamson*, No. 3:22-bk-2224-JAB (M.D. Fla. Bkr.).

[13]In his deposition occurring about a month before the hearing, the plaintiff
testified that he had disputed information about his bankruptcy case because his first
name was spelled wrong and blamed others for spelling his first name incorrectly.
D112-6 at 79, 128–30.

had conducted research by using an Artificial Intelligence (AI) research tool, had copied results without checking them, and had been "prejudiced" and rushed to file papers "out of survival" because he was "constantly being obstructed with everything" and "constantly being threatened with different things that the previous attorneys have said to [him], and, basically, the new ones have just continued, minus the words but still have continued with the actions."[14] D120 at 26–31, 35–39. He testified he had "upgraded to Casetext" and "manual" research. D120 at 26, 36. He told the Court he would not repeat the errors. D120 at 28, 38–39.

The plaintiff testified that he could not remember the name of the AI tool he had used, but the AI tool might have been "AI Robo, something like that."[15] D120 at 26–27. He said he could provide the "exact name" by emailing the Court or calling "up to the clerk." D120 at 27, 38. When asked if he had used ChatGPT or Gemini, he denied having used ChatGPT and testified he had used Gemini "before." D120 at 37–38. Later, this colloquy about the AI tool occurred:

> THE COURT: … Did you use Gemini?
>
> MR. WILLIAMSON: What?
>
> THE COURT: Did you use Gemini for your cases?
>
> MR. WILLIAMSON: I have used it. I have -- I have used it before, but I did -- there's an AI legal assistant bot, too. I just don't have the name of it.

---

[14]Eight lawyers have entered an appearance for Trans Union. Four lawyers have entered an appearance for Experian.

[15]The undersigned is unaware of any AI research tool or related product named "AI Robo" or anything similar.

> But, yes, ma'am, I have used Gemini. And I did use Gemini for some of those cases but not all. So, again, I -- I just -- I used it quick 'cause I was just trying to get a quick document.

D120 at 141–42.

The plaintiff addressed rule violations. D120 at 39–49. He testified that he had been confused and unable to find the current Local Rules or the standing order on the Court's website. D120 at 39–45. The Court asked him why he had not used the links to the Local Rules and the standing order provided more than once. D120 at 41, 44–45. He testified that he had lost the link originally provided and had not considered later orders because he does not regularly receive mail in South America. D120 at 39, 45–46. He testified that he understood his mistakes but had not "really" filed anything since the June 2024 hearing. D120 at 48.

The Court asked the plaintiff why he had represented to the Court that the only address that should be in his credit report is the 12183 Captiva Bluff Circle address, considering that he had used other addresses in other federal court actions and had admitted that other addresses were correct in the previous settlement agreement. D120 at 50–53. He testified:

- he never used the other addresses as primary addresses and they no longer belong to him, D120 at 53–54;

- he lives at the 12183 Captiva Bluff Circle address, D120 at 54;

- he moved back to Jacksonville after a separation and has "been here ever since," D120 at 55;

- the 12183 Captiva Bluff Circle address is the address for his "business and dealings" in the United States,[16] D120 at 55; and

- his mail is sent to the 12183 Captiva Bluff Circle address, and he receives "physical" mail in South America, D120 at 55.

The Court asked the plaintiff why he had testified that he had been in Jacksonville since his separation but also that he lives in South America. D120 at 55. He testified:

> Well, I'm -- but I'm saying -- but, Your Honor, I don't get mail there. I'm saying -- like, I get mail, but through a different type of way. But it's not like physical mail. It's like Amazon packages.
>
> So I'm saying, like, as far as physical address for my business and dealings in the United States, where I'm from, 12183 is my residence. That's where I've gone ever since I sold that property, which it shows that on my credit report.

D120 at 55–56.

About the 57 Paggi Terrace address he alleges in his amended complaint is "incorrect," *see* D23 at 5, he testified:

> That address is -- that's my business partner's. I also brought a credit report to show you. I'm an authorized user on all of his accounts. That's why that address showed up.
>
> It's okay for the address to be there. It's not okay for it to be primary because that creates fraud. When they go to try to match my accounts,

---

[16]Florida has public records of two businesses formed by the plaintiff: GymkingsLLC (with an address of 7643 Gate Parkway, 104, Jacksonville FL 32256, for the business and the 12183 Captiva Bluff Circle address for the plaintiff as the CEO) and Funnel One Investment LLC (with the 667 Jamestown Boulevard address for the business and for the plaintiff as the registered agent). *See* Sunbiz.org, https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults/OfficerRegistere dAgentName/williamson%20eliott/Page1 (last visited May 8, 2025).

34

you can't match them to an address I've never lived at or is not associated with any of my accounts. Every credit card that I have from Chase, First Progressive --

… [A]nything that I have is attached to 12183 Captiva Bluff, Your Honor, period.

So, again, you can have -- you can have other addresses, to answer your question, but where does your bill go? That's what's important. So your bill is going to go to your house, right? Everybody here pays bills. You have a car note, a car bill, everybody. That's common knowledge. So, again, where am I sending that to? 'Cause that's coming directly to my house. So that's what I mean by that.

D120 at 56–57.

The plaintiff ultimately admitted that he must have signed the settlement agreement in which he had verified the accuracy of the credit file with addresses that included the 57 Paggi Terrace address and testified that verifying the accuracy of the credit file was an "oversight":

No, I -- I mean, if they're saying that I signed it, I signed it. I mean, for the sake of arguing, Your Honor, again, because I received a check. So, yeah, I signed it. But, again, it was just an oversight on my part. But, again, that also included my address, which I was trying to show you right here on the first page. So it had the 12183 Captiva Bluff on there.

D120 at 60–61.

The plaintiff argued that Experian's argument in its motion for judgment on the pleadings—that the § 1681i claim is barred by the settlement agreement—is a "complete fabrication." D120 at 61. He testified that "they deleted [his] date of birth," they are sending creditors only his birth year, and he "can't be identified on any platform when [he does] a soft pull or a hard pull." D120 at 61. Later, he testified that he can be identified through Equifax. D120 at 62.

35

The Court asked the plaintiff if he wanted to address anything else in the order to show cause. D120 at 63. The plaintiff continued to argue the asserted merits of his claims and contended that he only "messed up on technicalities." D120 at 63–65. The Court explained that the plaintiff's conduct had surpassed "technicalities" and described his conduct as "egregious." D120 at 65. The plaintiff stated his understanding and said he could fix his errors. D120 at 65, 68, 70.

Experian's lawyer cross-examined the plaintiff. D120 at 79–114. The lawyer argued that, in addition to violating the rules and presenting the Court with falsities, the plaintiff had recorded a conference between himself and defense counsel without defense counsel's permission or knowledge. D120 at 71–73. The plaintiff admitted to recording "portions" of the conference and referenced a recording he had made of another conversation between himself and one of the lawyers. D120 at 85, 88–89. When Experian's lawyer asked him if he had recorded all calls with defense counsel, the Court advised him that, to the extent that recording others without their knowledge or consent is a crime in Florida, he had a right not to incriminate himself.[17] D120 at 89–90. The plaintiff chose not to answer. D120 at 90.

Experian's lawyer told the Court that the plaintiff had acted unprofessionally during conversations by yelling and using profanity ("the F-word"). D120 at 73, 87–88. The lawyer offered the transcript of the plaintiff's deposition to show him yelling at defense counsel and telling Experian's lawyer

---

[17]Florida criminalizes recording oral communications without the consent of everyone taking part in the communication. Fla. Stat. § 934.03(1), (2)(d).

The undersigned makes no finding on whether the plaintiff committed a crime by recording conferences with defense counsel without their knowledge or consent.

that she should represent "P Diddy."[18] D120 at 143; *see also* D112-6 at 192, 204, 211, 222, 233 (the plaintiff cussing at defense counsel); 196 (defense counsel asking the plaintiff to stop yelling); 197 (defense counsel asking the plaintiff to calm down); 234, 255 (the plaintiff telling Experian's lawyer that she should represent "Puffy" and "Puff-Puff").

The plaintiff admitted that he had used the F-word, D120 at 87–88, but denied having used the word more than once, D120 at 133. He testified he had not acted unprofessionally and argued he had acted only as rudely as defense counsel had. D120 at 130, 133–34. The Court asked him to provide examples of defense counsel's misconduct, and he testified that defense counsel had threatened him under Rule 11, had changed the case management report without his permission, and had delayed discovery. D120 at 134–39.

Experian's lawyer pointed to inconsistencies in the plaintiff's current testimony and previous deposition testimony:

- his current testimony that he signed the settlement agreement, D120 at 71, 104–07; versus his previous testimony that the signature on the settlement agreement is not his and he never signed the settlement agreement, D112-6 at 183–88; and

- his current testimony that he did not consult with people about how to file lawsuits to fix their credit or tell them about the Local Rules, D120 at 81–84; versus his previous testimony that he does "consultations for people now for credit repair, fixing

---

[18]Sean Combs, also known as "Puff Daddy," "P. Diddy," and "Diddy," is the defendant in a pending five-count indictment alleging racketeering; sex trafficking by force, fraud, or coercion; and transporting victims and commercial sex workers for prostitution. *See* D209 in *United States v. Combs*, No. 1:24-cr-0542-AS (S.D.N.Y.). He is also the defendant in more than fifty civil actions, including, for example, one by a plaintiff alleging sexual assault of a minor. *See* D1 in *Doe v. Combs et al.*, No. 1:24-cv-08813-JGK (S.D.N.Y).

their credit, lawsuits if need be" and that he would tell people the steps for pursuing lawsuits including to be familiar with a Local Rule, D112-6 at 23–64.

Experian's lawyer asked the plaintiff about the quizzical absence of his signature on his answers to interrogatories, D120 at 107–10, despite his inclusion of a separate page of a Notary Public certifying under penalty of perjury: "On this 3 day of December, 2024, before me, Ketalhen Y. Patel, a Notary Public, personally appeared Eliott Williamson, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within [sic] instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument," D112-5 at 2. Experian's lawyer also observed that by not signing the answers to interrogatories, the plaintiff had violated yet another rule (Rule 33(b)(5), Federal Rules of Civil Procedure). D120 at 114.

Trans Union's lawyer reiterated "everything" Experian's lawyer had said and stated his belief that the plaintiff was trying to "bring pain on defendants" and "rake [them] through the coals and make [the litigation] expensive" so the defendants would ultimately settle. D120 at 117–18. The lawyer argued that a "slap on the wrist" would be ineffective and that dismissal is warranted. D120 at 119.

Trans Union's lawyer orally moved to dismiss the action with prejudice as a sanction for the plaintiff's misconduct. D120 at 119. Experian's lawyer moved to stay the action pending a ruling on the motion. D120 at 148–49. The Court took the motions under advisement. D120 at 150–51.

The Court admitted six exhibits:

38

- Plaintiff's Exhibit 1:

  - a screenshot of emails between the plaintiff and Experian's previous lawyer in which she explains that the 57 Paggi Terrace address is associated with the Barclays account on the plaintiff's file, the plaintiff complains that his "real address" was deleted, and the plaintiff states, "I will be using our recent settlement of 5k as evidence to further prove my point of consistent violations against I would highly advise you to advise your clients to settle I'm sending you request for Subpoena Thursday or Friday and that will be followed with two more motions once I file them there will be no amount I accept because I will be waiting on the judges ruling in this favorable court," D112-1 at 1–2 (errors in original);

  - a screenshot of the plaintiff's credit score on Experian on April 16, 2024, that includes the 12183 Captiva Bluff Circle and 57 Paggi Terrace addresses, D112-1 at 3;

  - a screenshot of a WalletHub "WalletFitness" identity alert showing that the 12183 Captiva Bluff Circle address was not on the plaintiff's credit report as of October 21, 2023, D112-1 at 4; and

  - part of an email from Veridian Credit Union stating, "[Y]ou have the right to dispute the matter with the reporting agency" and identifying Trans Union, D112-1 at 5.

- Plaintiff's Exhibit 2:

  - a screenshot of an "iPostal1" digital mailbox of "Eliott Williamson ZionEquityGroup 9951 Atlantic Blvd Ste 443 #1008 Jacksonville FL 32225 United States," D112-2 at 1;

  - transaction notations, D112-2 at 2–3;

39

> - ▪ transaction notations with the 9951 Atlantic Boulevard address, D112-2 at 4–6; and
>
> - ▪ a "PhysicalAddress.com" account statement to "ZIONEQUITYGROUP 1317 Edgewater Dr Suite 113 Orlando, FL 32804," D112-2 at 7–8; *see also* D120 at 56 (the plaintiff's testimony that the exhibit reflects his "business addresses").

- Plaintiff's Exhibit 3: emails between the plaintiff and Experian's previous lawyer discussing settlement and Experian's agreement to remove the "Petition for Chapter 7 Bankruptcy" from three accounts, D112-3.

- Plaintiff's Exhibit 4:

> - ▪ the first page of the plaintiff's credit report from Experian for April 25, 2023, showing the 12183 Captiva Bluff Circle address, D112-4 at 2; and
>
> - ▪ part of a credit report from Experian for November 2, 2022, showing the 12183 Captiva Bluff Circle address, the 9951 Atlantic Boulevard address, and an address of 5753 Highway 85 N. #3048, Crestview, FL 32536-9365, and "also known as" names of "Williamson Eliott" and "Eliott Williamun," D112-4 at 3–4 (capitalization omitted).

- Defense Exhibit 1:

> - ▪ the first page of Experian's first set of interrogatories to the plaintiff without his signature, Doc 112-5 at 1; and
>
> - ▪ the notary statement purportedly about his signature, D112-5 at 2.

- Defense Exhibit 2: the transcript of the plaintiff's deposition, D112-6, D112-7.

D120 at 128, 129, 145, 157–59.

The plaintiff objected to admitting the defense exhibits, D120 at 128–29, 143–45, and defense counsel objected to admitting Plaintiff's Exhibit 1, D120 at 127. The Court overruled the objections and reserved ruling on the relevancy of some of the information. D120 at 127, 129, 145. The Court directed the parties to submit any additional exhibits by December 6, 2024; to confer only by email; and to file the emails on the public docket to ensure professionalism going forward. D112 at 2; D120 at 146–48, 153, 160.

### D.    *After the Hearing on the Latest Order to Show Cause*

Less than an hour after the hearing, the plaintiff filed a response to the latest order to show cause. *See* D112 (hearing concluded at 12:52 p.m.); D107 (written response filed at 1:16 p.m.). The response violated the standing order, *see* Attachment A, and contained four falsities, *see* Attachment B, including a citation to a non-existent case that the Court had identified in the latest order to show cause, *compare* D107 at 4 (citing "*Cheeks v. Equifax Info. Servs. LLC*, 2022 WL 4335897 (N.D. Ga. Sept. 19, 2022)"), *with* D105 at 3 (identifying "*Cheeks v. Equifax Information Services LLC, No.1:21-CV-00262-JPB, 2022 WL 4335897 (N.D. Ga. Sept. 19, 2022)*" as a case that appears not to exist).

The next day, the plaintiff filed an amended response to the latest order to show cause. D108, D109. Under "Reason for Amendment and Emergency Justification," the plaintiff states that he submitted the amended response "to correct a prior error in case citation and provide new arguments addressing discovery misconduct by Defendants." D108 at 1. The amended response violates the Local Rules and the standing order, *see* Attachment A, and contains two falsities, *see* Attachment B, including replacing the citation to the non-existent case in his original response with a citation to another

41

non-existent case, *see* D108 at 1; D109 at 3 (replacing "*Cheeks*" with "*Jones v. Experian Info. Sols., Inc.*, 982 F.3d 983 (7th Cir. 2020)").

Under the heading, "Citation of Non-Existent or Misquoted Cases," the plaintiff states that he "acknowledges that errors in case citations occurred due to reliance on secondary sources." D108 at 1 (emphasis omitted). He states, "These errors were unintentional and not meant to mislead the Court. The prior citation to Equifax v. Cheeks has been replaced with Jones v. Experian Information Solutions, Inc., a case directly addressing address inaccuracies under the FCRA." D108 at 1 (emphasis omitted). Under the heading, "Name Variations," the plaintiff states, "Clerical Errors: Discrepancies between 'Eliott' and 'Elliott' in Defendants' records have caused identity misreporting. Plaintiff requests acknowledgment of 'Eliott' as his legal name for this proceeding." D108 at 4 (emphasis omitted).

Under the heading, "Defendants' Obstruction of Discovery," the plaintiff argues that the defendants violated Rule 30(f)(3), Federal Rules of Civil Procedure, by filing "deposition transcripts [sic] as exhibits [sic] to support their [oral] motion to dismiss without providing" him copies and that this prejudiced him because he "was unable to review the transcripts [sic] for accuracy or prepare a substantive response to the motion." D108 at 4 (emphasis omitted). He alleges that the defendants improperly cross-examined him at the hearing using the transcript, demonstrating "a pattern of discovery obstruction." D108 at 4.

The plaintiff argues that the defendants failed to notify him that they had reinserted "inaccurate bankruptcy information on his credit report, violating … § 1681i(a)(5)(B)." D108 at 3 (emphasis omitted). He argues that Trans Union's counsel "admitted to Judge Richardson [at the settlement

conference] that Defendants [had] failed to notify Plaintiff of the reinsertion." D108 at 3. He contends that "[a]dress inaccuracies remain unresolved and represent new violations not covered by the prior settlement." D108 at 3.

Under the heading, "Relief Sought," the plaintiff requests exclusion of the transcript of his deposition; denial of the motions for judgment on the pleadings; monetary sanctions of $1,500 against the defendants to compensate him for the "time and effort expended in preparing this response to address Defendants' discovery violations, including the improper filing and use of deposition transcripts [sic]" and to "[d]eter Defendants from engaging in similar procedural misconduct in the future"; and an order compelling the defendants to provide the transcript and scheduling a hearing to address the alleged discovery violations. D108 at 4–5 (emphasis omitted).

The same day that the plaintiff filed the amended response to the latest order to show cause, he filed a "Motion to Dismiss Defendant's Motion for Judgment, Impose Monetary Sanctions, and Exclude Improperly Introduced Deposition Transcripts." D110, D111 (capitalization omitted). The motion violates the Local Rules and the standing order, *see* Attachment A, and includes six falsities, *see* Attachment B.

In the motion, the plaintiff again complains that Experian failed to provide him with a copy of the transcript of his deposition. D110 at 1. Like the relief requested in his amended response to the latest order to show cause, he asks the Court to "[d]ismiss [Experian]'s Motion for Judgment for procedural misconduct"; "[e]xclude the deposition transcripts [sic] introduced at the Show Cause hearing"; "[i]mpose monetary sanctions of $1,500 against [Experian] to compensate [him] for prejudice caused by procedural violations"; "[c]ompel immediate production of the deposition transcripts [sic], with further sanctions

43

if [Experian] fails to comply"; "[g]rant a hearing to address these issues"; and "[g]rant any additional relief this Court deems just and proper." D110 at 5.

The defendants filed ten supplemental exhibits, D116-1 to D116-10, describing them as follows:

Exhibit A - ECF No. 107 – Plaintiff's Response to Order to Show Cause – citation of fake case (*Cheeks v. Equifax Information Services LLC*) and misapplication of case law (filed shortly after the hearing on 12/4/24);

Exhibit B - ECF No. 108 – Plaintiff's Amended Response to Order to Show Cause – misapplication of case law and discusses communications made during October 8, 2024 settlement conference despite the Court's warning during the December 4, 2024 hearing that such communications are confidential and must not be disclosed (filed 12/5/24);

Exhibit C - ECF No. 109 – Plaintiff's Memorandum of Law in Support of Amended Response to Order to Show Cause – misapplication of case law (filed 12/5/24);

Exhibit D - ECF No. 110 – Plaintiff's Motion to Dismiss Defendant's Motion for Judgment, Impose Monetary Sanctions, and Exclude Improperly Introduced Deposition Transcripts – misapplication of case law (filed 12/5/24);

Exhibit E - ECF No. 111 – Plaintiff's Memorandum of Law In Support of Motion to Dismiss Defendant's Motion for Judgment, Impose Monetary Sanctions, and Exclude Improperly Introduced Deposition Transcripts – misapplication of case law (filed 12/5/24);

Exhibit F - ECF No. 41 – Defendant Trans Union LLC's Response in Opposition to Plaintiff's Motion for Summary Judgment – placing Plaintiff on notice of non-existent and misapplied case law as early as May 20, 2024;

Exhibit G - ECF No. 42 – Defendant Experian Information Solutions, Inc.'s Response in Opposition to Plaintiff's Motion for Summary Judgment – placing Plaintiff on notice of non-existent case law as early as May 20, 2024;

44

Exhibit H - Plaintiff's improper verification of his answers to Experian's First Set of Interrogatories to Plaintiff (served 12/6/24);

Exhibit I - Emails between Plaintiff and Defendants dated December 5, 2024, as follows:

  i. Email at 9:35 am EST from Jodi Kalson to Eliott Williamson discussing fake cases and deficient certificate of service;

  ii. Email at 9:48 am EST from Eliott Williamson to Jodi Kalson providing link to *Losch v. Nationstar* case;

  iii. Email at 9:48 am EST from Eliott Williamson to Jodi Kalson providing link to *Gillispie v. Equifax* case;

  iv. Email at 9:57 am EST from Eliott Williamson to Jodi Kalson indicating that Plaintiff will amend case and that it was an oversight;

  v. Email at 9:59 am EST from Eliott Williamson to Jodi Kalson indicating that Plaintiff submitted wrong version and will send amended version of response;

  vi. Email at 10:21 am EST from Eliott Williamson to all counsel to confer on Response to Show Cause Order;

  vii. Email at 10:42 am EST from Eliott Williamson to all counsel indicating that motion was not sent due to error;

  viii. Email at 11:12 am EST from Eliott Williamson to Jodi Kalson and Omar Azam providing link to *Jones v. Experian* case;

  ix. Email at 2:20 pm EST from Maria Ruiz to Eliott Williamson, Omar Azam, Jodi Kalson explaining Defendants' position and objection to Plaintiff's amended response and issue of fake case citations and misapplication of case law; and

  x. Email at 6:53 pm EST from Eliott Williamson to all counsel providing copies of newly filed motions and providing opportunity to meet and confer after motions were already filed.

Exhibit J - Excerpts from the deposition of Plaintiff dated November 1, 2024 – improper conduct during deposition

  i. Yelling – p. 196, ll.1-3;

45

ii. Being asked to calm down – p. 197, ll. 1-5;

iii. Threatening to unilaterally end deposition – p. 199, ll. 13-21,
p. 202, ll. 6-9; and

iv. Name calling and insults – p. 234, ll. 8-13, p. 255, ll. 1-9.

D116 at 1–4.

The same day, the Court discharged the order to show cause as to Trans
Union. D115. The Court entered a separate order sua sponte staying the case,
denying Experian's oral motion to stay as moot, vacating the remaining
deadlines in the case management and scheduling order, D19, and directing
the clerk to terminate the pending motions for judgment on the pleadings, D44,
D65, and administratively close the case, "except that the parties may file any
supplemental exhibits by today, and Experian may respond to the motion to
dismiss, to impose sanctions, and to exclude evidence, [D]110, [D]111, by
December 19, 2024." D117 at 1 (emphasis omitted). The Court explained that
the "Court will reactivate the motions for judgment on the pleadings, [D]44,
[D]65, and enter an amended case management and scheduling order, if
warranted by a decision on sanctions, the motion to dismiss with prejudice,
[D]113, and the motion to dismiss, to impose sanctions, and to exclude
evidence, [D]110, [D]111." D117 at 1–2.

In mid-December 2024, Experian responded to the plaintiff's motion to
dismiss, to impose sanctions, and to exclude evidence. D121. Experian
describes the motion as "yet another needless multiplication of these
proceedings with frivolous motions." D121 at 2. Experian states that its "use
of the deposition transcript was entirely appropriate" and explains that the
plaintiff's "failure to read and sign the [transcript] was due to the court
reporter's failure to notify [the plaintiff] that the transcript was available for

him to review." D121 at 2. Experian explains that it and the court reporter became aware of the oversight upon receiving the plaintiff's motion, and the "court reporter has since provided a secure link" to the transcript for the plaintiff's review and signature. D121 at 3–4. Experian argues that it had no obligation to provide the plaintiff with the transcript. D121 at 7–8. Experian observes that the motion violates the Local Rules and misrepresents case holdings. D121 at 2.

Despite the stay, the plaintiff continued filing papers. In the span of sixteen days in mid to late-December 2024, the plaintiff filed ten additional motions and other papers and five exhibits:

1.   an "emergency" motion for leave to file supplemental exhibits and correct citations, D118 (capitalization omitted);

2.   a memorandum of law in support of the motion for leave to file supplemental exhibits, correct citations, strike the defendants' pleadings, and invoke a "local rule emergency exemption," D119, with four exhibits, D119-1 to D119-4 (capitalization omitted);[19]

---

[19]In the "emergency" motion, the plaintiff requests leave to file as "Supplemental Evidence" papers from another case (*Cheeks*), D119-1, D119-2; an Eleventh Circuit decision from another case (*Losch v. Nationstar Mortgage LLC*, 995 F.3d 937 (11th Cir. 2021)), D119-3; and a pleading from the latter case (*Losch v. Nationstar Mortgage LLC and Experian Info. Sols., Inc.*, Case No. 2:18-cv-809 (M.D. Fla.)), D119-4. D118 at 5–6 (emphasis omitted).

The plaintiff states that he "previously cited [*Cheeks*] with an incorrect case number and that he has "confirmed the correct case number as 1:23-cv-05977 in the Northern District of Georgia." D118 at 3 (emphasis omitted). As explained in note 11, *supra*, the plaintiff misrepresented not just the citation of that case but also falsely said that the case stands for a proposition for which it does not stand. *See* No. 1:23-cv-05977-LMM.

3.    a reply in support of the motion for "default" judgment, adverse inferences, monetary sanctions, and to strike improperly introduced deposition testimony, D123 (capitalization omitted);

4.    a declaration in support of the motion to strike depositions, impose sanctions, and for adverse inference, D124;

5.    a notice of an exhibit, D125;

6.    a "reply" to Experian's motion to strike the plaintiff's "emergency" motion for leave to file supplemental exhibits and correct citations, D127 (capitalization omitted);

7.    a notice of "errata," D128 (capitalization omitted);

8.    a notice of withdrawing the reply in support of the motion for "default" judgment, adverse inferences, monetary sanctions, and to strike improperly introduced deposition testimony, D129;

9.    a motion for leave to file a reply in support of the motion for "default" judgment, adverse inferences, monetary sanctions, and to strike improperly introduced deposition transcripts, D130, with an exhibit, D130-1; and

10.    a "notice of clarification regarding Local Rule 3.01(d)," D132 (capitalization omitted).

---

The plaintiff states that he confirmed the "relevance" of *Losch* and describes *Losch* as an "Eleventh Circuit decision [that] emphasizes the necessity of procedural compliance under the FCRA, particularly regarding reinsertion notifications under 15 U.S.C. § 1681i(a)(5)(B)." D118 at 2, 4 (emphasis omitted). *Losch*, however, does not discuss re-insertion. *See* D71 at 2 (Trans Union's June 2024 observation that the plaintiff was misrepresenting *Losch*); D105 at 3 (the Court's November 2024 observation that the plaintiff was misrepresenting *Losch*).

The plaintiff states, "Following [*Losch*], Mr. Losch amended his complaint to include Defendant Experian for similar FCRA violations." D118 at 4. Contrary to the plaintiff's description, the plaintiff in *Losch* did not amend his complaint after the Eleventh Circuit's decision. *See* docket in No. 2:18-cv-809.

The papers violate the Local Rules, the standing order, or both, *see* Attachment
A; and six papers contain falsities, including a citation to a case that does not
exist, *see* Attachment B.

More recently, the plaintiff filed twelve more motions and other papers
and fourteen exhibits:

1.      a motion for a status conference, D134;

2.      a supplemental notice and submission of new evidence in
        support of the motion for sanctions, D136;

3.      a notice of filing an exhibit, D137, and an exhibit, D137-1;

4.      a second supplemental notice and submission of new
        evidence in support of the motion for sanctions, D138, and
        an exhibit, D138-1;

5.      a response in opposition to a motion to strike, D140;

6.      a supplemental notice regarding service failure, D141, and
        an exhibit, D141-1;

7.      a "notice of reactionary ruling and preservation of record
        following writ and Rule 60(d)(3) filings," D142 (some
        capitalization omitted);

8.      a motion to strike the defendants' pleadings and depositions
        for fraud on the court and a request for adverse inferences,
        sanctions, and "terminating relief," D143 (capitalization
        omitted), with eleven exhibits, D143-1;

9.      a response in opposition to a motion to strike, D146;

10.    a motion to compel disclosure of judicial records, sealed
entries, and internal communications,[20] D147;

11.    a motion for judicial reassignment,[21] D148; and

---

[20]In the motion to compel disclosure of judicial records, sealed entries, and internal communications, the plaintiff asks the Court to "[d]isclose all sealed in-camera, and redacted filings, including any removed, hidden, or internally flagged docket entries that may impact the case"; "[p]roduce all internal communications, memos, or discussions between judicial staff, the Court, and defense counsel related to [his] filings, hearings, or litigation strategy—including any off-the-record meetings, calls, or coordination with external agencies"; "[d]isclose metadata logs from CMS/ECF [sic] and court systems, including docket access, routing filters (e.g., 'Do Not Rule,' 'Pro Se,' 'Sensitive'), delays in processing, and whether any throttling, rerouting, or automation was applied to [his] filings"; "[r]eveal any administrative or supervisory influence—such as from the Clerk of Court, Chief Judge, or court security—that may have contributed to delay, withholding, or mismanagement of this case"; and "[c]ertify under penalty of perjury that all [his] filings were received, processed, and time-stamped in full compliance with judicial standards." D147 at 2–3 (emphasis omitted).

[21]In the motion for judicial reassignment, the plaintiff cites 28 U.S.C. § 455(a) and complains that "motions supported by unrebutted constitutional evidence, including fraud on the court and transcript suppression" have remained pending for more than four months; no current deadlines are in place and "key motions" have been pending since 2024; defense motions have been ruled on while his have been "ignored, denied without merit review, or procedurally obstructed"; "[c]ase management changes and transcript alterations have occurred without [his] consent or due process"; "[d]efense filings appear to benefit from undisclosed pre-docket access or timing alignment with internal court delays"; and the "refusal to address procedural obstruction and evidence suppression has placed [his] constitutional rights at continued risk." D148 at 2–3. He requests: (1) "Immediate reassignment of this case to another Article III judge within the Middle District of Florida of integrity"; (2) "Certification that the reassignment is based on safeguarding judicial integrity and avoiding further due process concerns"; (3) "Entry of a neutral case management schedule following reassignment"; and (4) "Any additional relief the Court deems necessary to preserve fairness and public confidence." D148 at 3–4.

Under § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard "is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant

50

> 12. a "judicial reminder and notice of pending motions affecting
>     constitutional rights," D149 (capitalization omitted).

Four of the papers violate the Local Rules, *see* Attachment A; and six papers contain falsities, including a citation to a case that does not exist, *see* Attachment B.

The plaintiff has also filed in the United States Court of Appeals for the Eleventh Circuit an "Emergency Petition for Writ of Mandamus," two motions to proceed in forma pauperis, a disclosure statement, and a motion to withdraw the most recent motion to proceed in forma pauperis. *See* Appeal No. 25-11250.[22] The motion to withdraw was granted, and the plaintiff paid the filing fee. *See* D8, D9 in Appeal No. 25-11250.

---

doubt about the judge's impartiality, and any doubts must be resolved in favor of recusal[.]" *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal citations, quotation marks, and quoted authority omitted). "[T]he allegation of bias must show that 'the bias is personal as distinguished from judicial in nature.'" *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (quoted authority omitted). Recusal is not required merely because a litigant files a complaint of judicial misconduct against the judge. *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1265 (11th Cir. 2009).

The plaintiff requests recusal of the assigned district judge, an issue not before the undersigned. To the extent the plaintiff intended to request recusal of the undersigned as well, he shows no basis for recusal under § 455(a) (or under the other recusal statute, 28 U.S.C. § 144). Rather, his primary complaint appears to be the failure to rule on his motions more quickly and to schedule the case for trial. Much of the delay—which is not inordinate in this busy district—is attributable to the plaintiff himself, who continues to file motion after motion and paper after paper and whose conduct, including citing fake cases, prompted the stay necessary to give the Court sufficient time to consider the record, determine an appropriate sanction, and write a comprehensive report and recommendation.

[22]A mandamus petition is not an appeal, and "the filing of a mandamus petition [does not] divest the district court of jurisdiction," *Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1259 (10th Cir. 2022) (collecting cases); *see also Fed. Ins. Co. v. United States*, 882 F.3d 348, 362 (2d Cir. 2018) ("A petition for a [writ of] mandamus directing

## V.    Sanctions Law

Outside of the discovery context and contempt proceedings, two primary sources of authority permit sanctions against a pro se litigant: Rule 11, Federal Rules of Civil Procedure, and inherent power.

Rule 11 serves to deter litigation abuses. Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment; *see also Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998) ("Rule 11 is intended to reduce frivolous claims and to deter costly meritless maneuvers, thereby eliminating delay, and reducing the cost of litigation.")*, overruled on other grounds by Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*, 66 F.4th 876, 881 (11th Cir. 2023).

Rule 11(a) requires a signature on papers by an attorney or pro se litigant, and Rule 11(b) creates a certificate by the person presenting a paper to the court:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument

---

the district court to ... decide a long-outstanding motion clearly would not deprive the district court of its power to do so.").

The plaintiff's filing of a mandamus petition does not divest this Court of jurisdiction.

for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b); *see also Maldonado v. Baker Cnty. Sheriff's Off.*, 23 F.4th 1299, 1306 (11th Cir. 2022) (observing that Rule 11 "applies to all papers filed in federal court, including those filed pro se" (emphasis omitted)); *Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997) ("Rule 11 requires [litigants] to make reasonable inquiries into the veracity of information filed before the court and to advise the court of any changes.").

Rule 11(c) describes the sanctions available for a Rule 11(b) violation: "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Rule 11(c) explains the requirements for a motion for sanctions under the rule and authorizes a court "[o]n its own" to "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(2) & (c)(3). The order to show cause "provides the person with notice and an opportunity to respond." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

Rule 11(c) describes the nature of a sanction:

> A sanction imposed under this rule must be limited to what suffices to
> deter repetition of the conduct or comparable conduct by others similarly
> situated. The sanction may include nonmonetary directives; an order to
> pay a penalty into court; or, if imposed on motion and warranted for
> effective deterrence, an order directing payment to the movant of part
> or all of the reasonable attorney's fees and other expenses directly
> resulting from the violation.

Fed. R. Civ. P. 11(c)(4); *see also* Fed. R. Civ. P. 11 advisory committee's note to
1993 amendment (explaining that sanctions may include "striking the
offending paper; issuing an admonition, reprimand, or censure; requiring
participation in seminars or other educational programs; ordering a fine
payable to the court; [and] referring the matter to disciplinary authorities");
*Messengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (explaining that a Rule
11 sanction "may be imposed for the purpose of deterrence, compensation, and
punishment" (quoted authority omitted)).

Rule 11(c) requires that "[a]n order imposing a sanction … describe the
sanctioned conduct and explain the basis for the sanction." Fed. R. Civ. P.
11(c)(6). The rule "does not attempt to enumerate the factors a court should
consider in deciding whether to impose a sanction or what sanctions would be
appropriate in the circumstances; but, for emphasis, it does specifically note
that a sanction may be nonmonetary as well as monetary." Fed. R. Civ. P. 11
advisory committee's note to 1993 amendment. Some considerations "may in a
particular case be proper":

> Whether the improper conduct was willful, or negligent; whether it was
> part of a pattern of activity, or an isolated event; whether it infected the
> entire pleading, or only one particular count or defense; whether the
> person has engaged in similar conduct in other litigation; whether it was
> intended to injure; what effect it had on the litigation process in time or
> expense; whether the responsible person is trained in the law; what
> amount, given the financial resources of the responsible person, is
> needed to deter that person from repetition in the same case; what
> amount is needed to deter similar activity by other litigants[.]

*Id.* "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." *Id.*

An objective standard is used to determine whether a Rule 11 sanction is warranted. *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003). The standard, which is "more stringent than the original good-faith formula," *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1331 (11th Cir. 1992) (quoted authority omitted), considers what is reasonable under the circumstances and what was reasonable to believe when the paper was submitted, *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998); *see also Kaplan*, 331 F.3d at 1255 (explaining that a court must "determine whether a reasonable [party] in like circumstances could believe his actions were factually and legally justified"); *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (explaining that a court "is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted" (quoted authority omitted)). The standard "does not mandate a finding of bad faith." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). "Rule 11 authorizes the district court to sanction a party who files a pleading containing a false factual representation if that party knew of, or did not reasonably inquire into, the falsehood." *Mitchell v. Nobles*, 873 F.3d 869, 875 (11th Cir. 2017).

A court's decision to impose a Rule 11 sanction on its own is reviewed "with particular stringency." *Kaplan*, 331 F.3d at 1255 (internal quotation marks and quoted authority omitted). The court applies a heightened standard

more "akin to contempt." *Id.* at 1255–56; *see also McGregor v. Chierico*, 206
F.3d 1378, 1387 (11th Cir. 2000) (explaining that contempt must be established
by clear and convincing evidence); *McDonald v. Emory Healthcare Eye Ctr.*,
391 F. App'x 851, 853 (11th Cir. 2010) (explaining that the Eleventh Circuit
has "not elaborated on the 'akin to contempt' standard"); *In re Engle Cases*, 283
F. Supp. 3d 1174, 1213 (M.D. Fla. 2017) (holding that "akin to contempt" does
not require subjective bad faith because contempt does not require it).

When a Rule 11 sanction is considered against a pro se plaintiff, the court
"must take into account the plaintiff's pro se status when determining whether
the filing was reasonable." *Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir.
1989). Although the standard under Rule 11 is the same for pro se litigants,
"the court has sufficient discretion to take account of the special circumstances
that often arise in pro se situations." Fed. R. Civ. P. 11 advisory committee's
note to 1983 amendment (emphasis omitted). Still, "pro se filings do not serve
as an impenetrable shield, for one acting pro se has no license to harass others,
clog the judicial machinery with meritless litigation, and abuse already
overloaded court dockets." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir.
1988) (internal quotation marks, quoted authority, and emphasis omitted).

Besides sanctioning a party under Rule 11, a court may sanction a party
using its inherent power. *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304
(11th Cir. 2006); *see also* Fed. R. Civ. P. 11 advisory committee's note to 1993
amendment ("Rule 11 is not the exclusive source for control of improper
presentations of claim, defenses, or contentions. … It does not inhibit the court
in punishing for contempt, in exercising its inherent powers, or in imposing
sanctions, awarding expenses, or directing remedial action authorized under
the rules[.]"). While Rule 11 "reach[es] certain … conduct, the inherent power

extends to a full range of litigation abuses and must continue to exist to fill in the interstices." *Peer,* 606 F.3d at 1314 (internal quotation marks and quoted authority omitted). "Indeed, the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct, for these rules are not substitutes for the inherent power." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (internal citation, quotation marks, and quoted authority omitted). Still, if the bad-faith conduct is "adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Chambers*, 501 U.S. at 50; *see also* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("*Chambers* cautions … against reliance upon inherent powers if appropriate sanctions can be imposed under provisions such as Rule 11, and the procedures specified in Rule 11—notice, opportunity to respond, and findings—should ordinarily be employed when imposing a sanction under the court's inherent powers."). A court may rely on its inherent power if "in the informed discretion of the court," Rule 11 is not "up to the task[.]" *Chambers*, 501 U.S. at 50.

"The purpose of the inherent power is both to vindicate judicial authority without resorting to contempt of court sanctions and to make the non-violating party whole." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017). "Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority." *Id.*

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. To use inherent power, a court must find that a lawyer or party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 44–46 (quoted authority omitted);

*accord Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power is a finding of bad faith."). The standard is subjective, *Purchasing Power*, 851 F.3d at 1223–24, and "narrows the range of conduct that can satisfy this higher threshold for sanctions," *Peer,* 606 F.3d at 1314–15.

"Dismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985). The sanction is warranted only if "(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337–38 (11th Cir. 2005) (quoted authority omitted). Mere negligence or confusion cannot justify a finding of willfulness. *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006). "[T]he harsh sanction of dismissal with prejudice is thought to be more appropriate in a case where a party, as distinct from counsel, is culpable." *Betty K Agencies*, 432 F.3d at 1338.

## VI.    Analysis and Additional Law

In response to the latest order to show cause, the plaintiff has failed to show cause why a sanction should not be imposed. Sanctioning the plaintiff under the Court's inherent power is necessary to vindicate judicial authority. The plaintiff has acted both objectively unreasonably and with subjective bad faith. Rule 11 is not up to the task because the plaintiff's misconduct is varied and extends beyond papers. No sanction less than dismissal with prejudice will suffice.

The plaintiff's misconduct has manifested in at least five ways, discussed in the same order as the latest order to show cause, D105, but omitting an analysis of whether he served a non-party with a purported subpoena because the record is unclear on whether he did.[23]

First, the plaintiff has repeatedly (127 times) cited non-existent cases and rules, misquoted cases, and misrepresented rules and holdings. *See* Attachment B. By presenting these falsities for the Court's consideration, he has wasted the Court's limited time and resources, he has wasted the defendants' money, and he has undermined the trust placed in a paper presented for judicial consideration. Worse, he continued presenting falsities for the Court's consideration after the defendants called him out directly and, rather than try to correct the falsities, he complained about defense counsel's threat of Rule 11 sanctions and likened the "threat" to his own misconduct. *See* Attachment B; D41 at 2, 8; D42 at 5 & n.3; D71 at 2 & n.1; D99 at 9 & nn.3, 4; D120 at 31, 134–35. Worse still, he continued presenting falsities for the Court's consideration after the hearing on the latest order to show cause, rendering hollow any apology he had made at the hearing and dubious his asserted research-tool "upgrade[]" that would ensure the correctness of his

---

[23]On one hand, in a motion to compel compliance with a subpoena, the plaintiff states, "A copy of the served subpoena is attached hereto as **Exhibit A**." D56 ¶2. Exhibit A has the case caption, the title "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises," the plaintiff's signature, a photograph of a building and its downspout, and a return of service by a process server. D56-1. Thus, in the motion, the plaintiff indicates that the process server served Exhibit A to the motion, D56-1, which is not a court-issued subpoena. On the other hand, at the hearing, the plaintiff presented court-issued subpoenas and returns of service by process servers, showing he had served non-parties with court-issued subpoenas. Unclear is whether he served on any non-party both the subpoena he appears to have created and the court-issued subpoenas.

citations. *See* Attachment B; D107–D111; D118; D120 at 26 (quoted), 28 (quoted), 36; D123; D130; D132; D136; D138; D143; D146–D148.

"Citing nonexistent case law or misrepresenting the holdings of a case is making a false statement to a court." Maura R. Grossman et al., *Is Disclosure and Certification of the Use of Generative AI Really Necessary?* 107 JUDICATURE 68, 75 (2023). "It does not matter if [generative AI] told you so." *Id.*

The "harms [that] flow from the submission of fake opinions" are many:

> The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity.

*Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023). Accordingly, reliance on fake opinions is "an abuse of the adversary system." *Id.* at 461.

Second and third, the plaintiff intentionally spelled his first name wrong in his bankruptcy petition and, in a similar vein, misrepresented facts to this Court in this action.[24] His testimony in response to the latest order to show

---

[24]The plaintiff claims his misspelling of his first name in his bankruptcy petition was unrealized and unintentional—a product of "typing fast," D120 at 10, 12—but his testimony is unbelievable. Purporting to know in December 2024 the reason for a misspelling made more than two years earlier (November 2022) is highly unusual. Unintentionally misspelling one's own first name is highly unlikely. The asserted "typo" was the inclusion of a second "l," for the usual spelling of "Elliott,"

cause was made unbelievable by its manner—meandering and vague—and inconsistencies or falsities that include these examples:

- The plaintiff testified in that he believed the fake cases he had cited were "correct." D120 at 27. One or both defendants informed him they were not correct in May 2024, D41, D42, again in June 2024, D71, and again in September 2024, D99.

- The plaintiff testified that he could not remember the name of the AI research tool he had used. D120 at 26–28. He testified that the tool's name was something like "AI Robo." D120 at 26. He testified that he could provide the exact name of the AI research tool he had used. D120 at 38. Later pressed about Gemini, he testified he used it for "some" cases. D120 at 141–42.

- The plaintiff testified in December 2024 that his mistakes were made early on, and he had not "really" filed anything since the hearing on the first order to show cause in June 2024. D120 at 48. Between the June and December 2024 hearings, he filed six motions and seven papers, each of which violated the Local Rules, the standing order, or both. *See* D62, D63, D66, D67, D69, D70, D72, D85–D90; *see also* Attachment A.

- The plaintiff testified that his "life … is being affected because [he] can't be identified." D120 at 49. Later, he testified that he can be identified through Equifax. D120 at 62.

- The plaintiff testified that the 12183 Captiva Bluff Circle address is where he lives, is his "residence," and is where he

---

and not the actual, unusual spelling of his name ("Eliott"), making detection by the trustee and others less likely. He knows the FCRA, the reporting of bankruptcy cases, the challenges that can be made to the information in credit reports, and the negative impact a bankruptcy case can have on a credit score, and therefore had an incentive to try to mask his association with his. He did not misspell his first name in his other federal litigation, *see* pp. 6–7, *supra*, when a misspelling would not matter as much.

In any event, the recommendation is the same regardless of the intentional misspelling made in the bankruptcy case, brought up here to determine why the plaintiff was using a different spelling in this and other civil actions.

receives mail. D120 at 54–57. He testified that the other
addresses "no longer belong to" him. D120 at 53. He testified
that he had lived at the 667 Jamestown address, that he and
his ex-wife had had a mortgage on a 15536 Black Beach Street
address, that he and his ex-wife had rented the 465 Valmont
Avenue address, and that other addresses "belong" to his
"business." D120 at 53–55. Earlier, he told the Court, "I wanted
the other addresses that were off -- that were on there at that
time off of there because they did not belong to me. I never lived
there. I don't even know who reported them[.] ... I didn't know
where those other addresses were at or came from, actually. ...
I've never lived at whatever you're reporting here." D133 at 20.

- The plaintiff testified that he lives in Colombia, South America,
  and denied living in Jacksonville, Florida. D120 at 46. Later, he
  testified he lives in Jacksonville, at the 12183 Captiva Bluff
  Circle address. D120 at 54.

- The plaintiff testified that he had been unable to find the
  standing order on the Court's website, had lost the link to the
  standing order originally provided by the Court, and had not
  considered later orders because he does not regularly receive
  mail in South America. D120 at 39–46. The Court provided the
  link in the order directing the plaintiff to file an amended
  complaint and a disclosure statement by May 9, 2024. D21 at 2.
  The plaintiff timely filed an amended complaint and a
  disclosure statement, *see* D23, D26, demonstrating receipt of
  the order. The Court also provided the link in the first order to
  show cause directing the plaintiff to appear by phone on June
  6, 2024. D58 at 1. The plaintiff appeared by phone at that
  hearing, D60 at 1, demonstrating receipt of the order.

Fourth, the plaintiff has repeatedly and intentionally violated the rules
and the standing order (in 58 papers and appearances), starting with the
original complaint, D1, and continuing throughout the litigation, *see*
Attachment A. The plaintiff's subjective bad faith is reflected in the number of
his violations, *see* Attachment A, despite federal litigation experience, *see* pp.
6–7, *supra*; his own testimony that he chose speed over correctness, *see* D120

at 30–31, 37, 142; and his persistence in filing papers without care after repeated orders to follow the rules and the standing order, *see* D3, D19, D21, D34, D58, D60, D104, D105, D112, including after the hearing on the latest order to show cause at which he testified that he understood the rules and the standing order, D120 at 48. That he sometimes follows the rules and the standing order, *see* D134, D136, D138, D140, D141, D146, shows he can when he chooses to.

The Supreme Court has repeatedly emphasized the importance of rules and complying with them. *See, e.g.*, *Missouri v. Jenkins*, 495 U.S. 33, 50 (1990) ("Regular adherence to published rules of procedure best promotes the principles of fairness, stability, and uniformity that those rules are designed to advance."); *Maness v. Meyers*, 419 U.S. 449, 459 (1975) ("The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." (internal quotation marks and quoted authority omitted)); *Green v. Elbert*, 137 U.S. 615, 621 (1891) ("To the proper conduct of the business of this court rules are necessary, and, having been prescribed, reasonable compliance with them is expected, and must be insisted upon."); *see also Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008) ("The right of access to the courts is neither absolute nor unconditional. … Conditions and restrictions on each person's access are necessary to preserve the judicial resource for all other persons." (internal quotation marks and quoted authority omitted)).

The Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113

(1993); *see also Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("[A]lthough we are to give liberal construction to the pleadings of *pro se* litigants, we nevertheless have required them to conform to procedural rules." (internal quotation marks and quoted authority omitted)).

Compliance with the rules and orders is especially important in a court, like this Court, confronted with a judicial emergency. The Middle District of Florida is one of the busiest districts in the country. In 2024, 10,862 new cases were filed in the district, and the district's weighted filings per district judgeship were 686 (ranked 7th nationally). The district currently has only twelve of its fifteen district-judge seats filled. The Judicial Conference considers the vacancies judicial emergencies. *See* U.S. COURTS, "Judicial Emergencies," https://www.uscourts.gov/data-news/judicial-vacancies/judicial-emergencies (last visited May 8, 2025). Because of the vacancies, the district judge assigned to this case manages dockets in both the Orlando Division and the Jacksonville Division. With more than 1,216 new cases assigned to her in 2024, she had more than double the national average of assigned cases. Recognizing the district's overload, the Judicial Conference has recommended seven new district judgeships for the district, *see* JCUS-MAR 2025, making ideal twenty-two district judges, not the current twelve.[25]

---

[25]The district heavily uses magistrate judges to help. In 2024, the district's magistrate judges performed duties that included conducting 15,645 felony preliminary proceedings, or 869.2 per magistrate judge; 16,413 non-consent general civil pretrial duties, or 911.8 per magistrate judge; 2,366 duties in non-consent prisoner cases, or 131.4 per magistrate judge; and 776 miscellaneous duties, or a little over 43 per magistrate judge.

For federal-court statistics, see U.S. COURTS, "Federal Court Management Statistics," https://www.uscourts.gov/data-news/reports/statistical-reports/federal-court-management-statistics (last visited May 8, 2025).

A common violation has been of Local Rule 3.01(g), which imposes a duty to confer in good faith before filing most types of motions. The Court has explained, "Many potential discovery disputes are resolved (or the differences narrowed or clarified) when counsel confer in good faith. Rule 3.01(g) is strictly enforced. A motion that does not comply with the rule may be summarily denied." Middle District Discovery (2021) at Section I.A.2. The Court heavily relies on compliance with Local Rule 3.01(g) to further communication between adversaries and avoid needless motion practice.

Another common violation by the plaintiff has been of the standing order. A judge's job requires a lot of reading. For example, in this action, 3,426 pages were filed between January 12, 2024, and April 24, 2025. In any given year, a judge with more than 1,000 pending cases, like the district judge assigned to this case, may have millions of papers presented for judicial consideration. Many courts, including the United States Supreme Court and this Court, have typography rules. *See* S. Ct. R. 33; Local Rule 1.08. The standing order supplements the typography rule to require 12-point Arial typeface. *See* https://www.flmd.uscourts.gov/standing-order-judge-berger-revised-local-rules (last visited May 8, 2025). Although typography requirements may sound trivial at first blush, they serve the important purpose of ensuring readability (speed and comprehension), equal content, or both.[26]

The undersigned has carefully considered the various sanctions available, from striking papers to imposing a monetary sanction to dismissing the action with prejudice, mindful of the need for a sanction that is no more

---

[26]The undersigned prefers Century Schoolbook and uses the typeface in most orders and reports and recommendations, including this one. The district judge prefers Arial; thus, the standing order to litigants and lawyers. The recommendation is the same even if all violations of the standing order are disregarded.

severe than necessary to address the misconduct and vindicate judicial authority.

Dismissal with prejudice fits the bill. The plaintiff's pro se status earned him previous warnings with no sanction, *see* D21, D34, D58, D60, which have turned out to be wholly ineffective at curbing his abuses. A financial penalty will not work. The plaintiff moved to proceed in forma pauperis in the Eleventh Circuit when he applied for mandamus relief (though he has since withdrawn the motion and paid the filing fee, *see* D4, D7–D9 in Appeal No. 25-11250), and any appropriate amount assuredly would exceed any amount of damages the plaintiff could be awarded if he could show standing and if he could prove liability and causation.[27] Dismissal will vindicate judicial authority and have the added bonus of specific deterrence for the litigious plaintiff and general

---

[27]Under the FCRA, "Any person who willfully fails to comply with any requirement imposed under this subchapter ['Credit Reporting Agencies'] with respect to any consumer is liable to that consumer in an amount equal to the sum of-
-(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 …; [and] (2) such amount of punitive damages as the court may allow[.]" 15 U.S.C. § 1681n(a). "Any person who is negligent in failing to comply with any requirement imposed under this subchapter ['Credit Reporting Agencies'] with respect to any consumer is liable to that consumer in an amount equal to the sum of-- … any actual damages sustained by the consumer as a result of the failure[.]" *Id.* § 1681*o*(a)(1).

The plaintiff alleges no facts in the operative complaint that would suggest punitive damages are warranted. *See* D23. Perhaps overlooking the fact that he was recently bankrupt, the plaintiff contended at a hearing that the defendants are the ones who "cost" him a "credit approval in two locations" and each should "compensate" him $20,000 or $25,000 for missed opportunities to obtain a $50,000 loan and credit cards. D133 at 77–79. The Court observed that demanding the asserted loan amount was unreasonable because, had he obtained the loan and the credit cards, he would have had to pay back the borrowed amount. D133 at 79–80. He responded that he would have to pay taxes on settlement proceeds, suggesting that assessing damages based on the entire loan amount would be reasonable because he would not get to keep the entirety of the settlement proceeds. D133 at 81.

deterrence for lawyers and other litigants tempted to use generative AI with abandon and repeatedly ignore rules and orders.

The plaintiff's pro se status does not render dismissal with prejudice unfair. Like a lawyer, he must follow the rules and orders. *See McNeil*, 508 U.S. at 113. Moreover, with his litigation in this district and elsewhere, he is no ordinary pro se litigant.[28] *See* pp. 6–7, *supra*. The Court also twice directed him to the Court's robust resources for pro se litigants. *See* D21, D104. The resources include a tab on the home screen of the Court's website titled "For Litigants," which includes a page and resources dedicated to "Litigants without Lawyers," *see* https://www.flmd.uscourts.gov/litigants-without-lawyers (last visited May 8, 2025), such as the comprehensive *Guide for Proceeding without a Lawyer*, with a section explaining the "Rules Everyone Must Follow," *see* https://www.flmd.uscourts.gov/sites/flmd/files/documents/flmd-guide-for-proceeding-without-a-lawyer.pdf (last visited May 8, 2025), and a Legal Information Program through which a pro se litigant can make an appointment to meet with a lawyer without charge and ask general questions, including about federal procedure, *see* https://www.flmd.uscourts.gov/legal-information-program (last visited May 8, 2025).

At the hearing on the latest order to show cause, defense counsel relied on *Kruse v. Karlen*, 692 S.W.3d 43 (Mo. Ct. App. 2024). The opinion is persuasive. In *Kruse*, a state appellate court dismissed a pro se appellant's appeal because of "numerous fatal briefing deficiencies" that prevented the court "from engaging in meaningful review, including the submission of

---

[28]The undersigned does not consider defense counsel's argument that the plaintiff even advises others on suing under the FCRA and about the Local Rules, D120 at 81–84, 117–18, because defense counsel relied on the transcript of the plaintiff's deposition for that point. *See* pp. 68–69, *infra*.

fictitious cases generated by artificial intelligence[.]" *Id.* at 46. The court
described rule violations and observed that it cannot relax standards for pro se
litigants not because of the absence of sympathy but "from a necessity for
judicial impartiality, judicial economy, and fairness to all parties." *Id.* at 46–
51 (quoted authority omitted). The court observed that the appellant had
apologized for citing fictitious cases and explained that he had hired an online
consultant purporting to be a licensed attorney. *Id.* at 51. The court ruled,
"Filing an appellate brief with bogus citations … for any reason cannot be
countenanced and represents a flagrant violation of the duties of candor the
appellant owes to [the] court," having certified compliance with the rules. *Id.*
at 52. The court acknowledged "the challenges faced by pro se litigants" but
found the "appeal does not involve minor technical briefing deficiencies." *Id.*
The court observed that "[p]ro se appellants have successfully argued and won
appeals … using freely accessible caselaw" while the appellant "chose to retain
dubious assistance and submitted fictitious and incorrect legal authorities." *Id.*
at 52–53. Likewise, in this district, pro se litigants with no or less federal-
litigation experience than the plaintiff have succeeded while following rules
and orders and not presenting falsities for the Court's consideration.

As stated, defense counsel used the transcript of the plaintiff's deposition
at the hearing on the latest order to show cause to demonstrate inconsistencies
between the plaintiff's deposition testimony and his hearing testimony and to
further demonstrate mistreatment of defense counsel and other untoward
conduct. *See* D108 at 4; D110 at 1; D112-6; D112-7; D121 at 2–6; *see also* pp.
36–38, *supra*. Many of the plaintiff's complaints made after the hearing
concern defense counsel's use of the transcript in that way without the court
reporter having advised him that the transcript was available, or defense
counsel having given him a copy of it. *See, e.g.*, D110, D111, D118, D119, D124.

68

To determine whether a sanction is warranted or the appropriate sanction, the Court need not decide whether defense counsel had a legal obligation to give the plaintiff a copy of the transcript before the cross-examination or whether the plaintiff suffered any prejudice by not having a copy of the transcript of his own testimony given one month earlier about facts within his knowledge. Using the transcript to show those inconsistencies, mistreatment of defense counsel, or other untoward conduct is unnecessary to the analysis; the conclusion is the same regardless.

Let it be acknowledged that Trans Union has violated the Local Rules and the standing order. *See* D8–D11, D15, D28, D30, D40, D41, D59, D64, D71, D79, D102, D150. So has Experian. *See* D12–D14, D76, D77, D82, D122. So have the defendants together. *See* D17, D18, D80. The Court has denied non-compliant motions, D58, D61, D104, D133, ordered a lawyer to show cause why her unopposed motion for special admission to represent Trans Union should not be denied based on Local Rule 2.01(c)(3), D75, and ordered Trans Union to show cause why sanctions should not be imposed against Trans Union for continued failure to follow the Local Rules and the standing order, D104. Some similarities thus exist between the two sides; the differences shown by comparing the information in this paragraph with the information in Attachments A and B, including the plaintiff's repeated falsities, warrant the sanction against him and not them.

In sum, the plaintiff is entitled to his day in court, not the Court's weeks or months repeatedly trying to enforce the rules, repeatedly trying to enforce orders, repeatedly having to read frivolous filings, and repeatedly having to discern good law from bad. He has acted willfully. He has presented inconsistent facts. He has engaged in a pattern of misconduct. His misconduct

has infected the entirety of the litigation. His misconduct has cost the Court time and the defendants money. He is not a first-time, unknowing litigant. Dismissal with prejudice is warranted. Nothing less will suffice.

## VII. Recommendation

The undersigned **recommends**:

(1)    ruling on the motion for judicial reassignment, D148, to the extent that the plaintiff requests reassignment to a new district judge;

(2)    regardless of the assigned district judge, dismissing the action with prejudice;

(3)    denying as moot the oral motion to dismiss with prejudice, D113; and

(4)    directing the clerk to terminate all pending motions and close the file.[29]

---

[29]Other than the oral motion to dismiss with prejudice, D113, and the motion for judicial reassignment, D148, eleven motions are pending as of the entry of this report and recommendation:

(1)    Experian's motion for judgment on the pleadings, D44;

(2)    Trans Union's motion for judgment on the pleadings, D65;

(3)    the plaintiff's motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude improperly introduced deposition transcripts, D110, D111;

(4)    the plaintiff's emergency motion for leave to file supplemental exhibits and correct citations after the deadline, D118, D119;

(5)    Experian's motion to strike the plaintiff's "emergency" motion for leave to file supplemental exhibits and correct citations after the deadline, D122;

## VIII. Objections

"Within 14 days after being served with a copy of [a] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A [district judge] shall make a de novo determination of those portions of the report or specified proposed

---

(6)    the plaintiff's notice of withdrawal of previously filed reply, D129, construed as a motion to withdraw;

(7)    the plaintiff's motion for leave to file a reply in support of the motion for default judgment, adverse inferences, monetary sanctions, and to strike improperly introduced deposition transcripts, D130;

(8)    Experian's motion to strike the plaintiff's supplemental notices and submission of new evidence in support of the motion for sanctions, D139;

(9)    the plaintiff's motion to strike the defendants' pleadings and depositions pursuant to Fed. R. Civ. P. 60(d)(3) for fraud upon the court and request for adverse inferences, sanctions, and terminating relief, D143;

(10)   Experian's motion to strike the plaintiff's motion to strike the defendants' pleadings and depositions and request for adverse inferences, sanctions, and terminating relief, D145; and

(11)   the plaintiff's motion to compel disclosure of judicial records, sealed entries, and internal communications, D147.

In the interest of judicial economy, the motions are not analyzed in this report and recommendation. If the recommendation of dismissal with prejudice and termination of the motions is not adopted, the motions for judgment on the pleadings, D44, D65, must be reactivated, the other motions must be decided or struck, and a new case management and scheduling order must be entered.

findings or recommendations to which objection is made."). "A party failing to object to … findings or recommendations … in a report and recommendation … waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions[.]" 11th Cir. R. 3-1. The deadline to object to this report and recommendation is **May 27, 2025**.

**Entered** in Jacksonville, Florida, on May 13, 2025.

_____

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    Eliott Williamson
      12183 Captiva Bluff Cir. W.
      Jacksonville, FL 32226

# Attachment A*

|  | Date | D# | Paper/Proceeding | Rule Violated |
|---|---|---|---|---|
| 1 | 1/12/24 | 1 | Complaint | 1.08<br>3.03<br>Fed. R. Civ. P. 8(a) |
|  | 1/17/24 | 3 | **Order directing the parties to follow the Local Rules and the district judge's standing order** |  |
|  | 4/9/24 | 19 | **Scheduling order directing the parties to follow the Local Rules and the district judge's standing order, to file any motion to compel by the deadline to conduct discovery, to comply with Local Rule 3.01(g), to file a disclosure statement, to not file discovery unless necessary for a decision, and to maintain the confidentiality of settlement discussions** |  |
| 2 | 4/10/24 | 20 | Response to defendants' joint motion for judgment on the pleadings with memorandum of law | 1.08 |
|  | 4/12/24 | 21 | **Order directing the plaintiff to follow the Local Rules and the standing order and to resources for pro se litigants** |  |
| 3 | 4/18/24 | 22 | Initial disclosures under Fed. R. Civ. P. 26(a)(1) | Fed. R. Civ. P. 5(d)(1) |
| 4 | 4/18/24 | 23 | Amended complaint | 1.08<br>Fed. R. Civ. P. 10(b) |
| 5 | 4/19/24 | 24 | Motion for summary judgment | 1.08 |
| 6 | 4/19/24 | 25 | Motion for judicial notice | 1.08<br>3.01(g) |
| 7 | 4/22/24 | 26 | Disclosure statement | 1.08 |
| 8 | 5/2/24 | 29 | Motion to compel mediation | 1.08<br>3.01(g) |
| 9 | 5/8/24 | 33 | Opposition to Experian's motion to seal and incorporated memorandum of law | 1.08 |
|  | 5/13/24 | 34 | **Order denying the plaintiff's motion to compel mediation in part for violating the Local Rules and the standing order** |  |

---

*References to Local Rule 1.08 include violations of the typography requirements established in the district judge's standing order supplementing Local Rule 1.08.

|  | Date | D# | Paper/Proceeding | Rule Violated |
|---|---|---|---|---|
| 10 | 5/17/24 | 37 | Notice of intent to request judicial notice | 1.08 |
| 11 | 5/17/24 | 38 | Motion for judicial notice | 1.08<br>3.01(g) |
| 12 | 5/17/24 | 39 | Motion to amend the case management report | 1.08<br>3.01(g) |
| 13 | 5/21/24 | 45 | Amended motion to amend the case management report | 1.08<br>3.01(g)(2)<br>3.01(g)(2)(C) |
| 14 | 5/21/24 | 46 | Amended motion for summary judgment to add new evidence | 1.08<br>3.01(g) |
| 15 | 5/21/24 | 47 | Amended motion for judicial notice to include new evidence | 1.08<br>3.01(g)(2)<br>3.01(g)(2)(C) |
| 16 | 5/22/24 | 49 | Motion to deem requests for admission as admitted against Experian | 1.08 |
| 17 | 5/23/24 | 50 | Opposition to Trans Union's motion for judicial notice | 1.08<br>3.01(g) |
| 18 | 5/29/24 | 51 | Affidavit of authentication | 1.08 |
| 19 | 5/29/24 | 52 | Memorandum of law in support of the motion for summary judgment | 1.08<br>3.01(a) |
| 20 | 5/29/24 | 53 | Reply to the defendants' opposition and in support of plaintiff's motion for summary judgment with memorandum of law | 1.08<br>3.01(d) |
| 21 | 5/29/24 | 54 | Statement of undisputed material facts | 1.08 |
| 22 | 5/29/24 | 55 | Motion to show cause why Experian should not be sanctioned for failure to comply with discovery and for leave to file amended motion for summary judgment | 1.08<br>3.01(g)(2) |
| 23 | 5/29/24 | 56 | Motion to compel compliance with subpoena and for sanctions | 1.08<br>3.01(g) |
| 24 | 5/29/24 | 57 | Motion to strike Experian's motion for judgment on the pleadings | 1.08<br>3.01(g)(2) |

Attachment A | 2 of 5

| | Date | D# | Paper/Proceeding | Rule Violated |
|---|---|---|---|---|
| | 5/29/24 | 58 | **Order scheduling a show-cause hearing to address the plaintiff's repeated violations of the Local Rules and the standing order and denying without prejudice ten of the plaintiff's motions for violating the Local Rules, the standing order, or both** | |
| 25 | 6/6/24 | 60 | Show-cause hearing to address repeated violations of the Local Rules and the standing order and directing the plaintiff to follow the Local Rules and the standing order | 5.03(c)(7) 5.03(c)(9) 5.03(e)(7) 5.03(e)(8) |
| 26 | 6/17/24 | 62 | Motion to compel compliance with subpoena and for sanctions | 1.08 3.01(g)(2) |
| 27 | 6/17/24 | 63 | Response in opposition to Experian's motion for judgment on the pleadings | 1.08 3.01(g) |
| 28 | 6/24/24 | 66 | Rebuttal to Trans Union's motion for judgment on the pleadings | 1.08 |
| 29 | 6/24/24 | 67 | Response in opposition to Trans Union's motion to take judicial notice | 1.08 |
| 30 | 6/26/24 | 69 | Opposition to the defendants' motion to stay | 1.08 |
| 31 | 6/26/24 | 70 | Motion for leave to amend the response in opposition to Experian's motion for judgment on the pleadings | 1.08 3.01(g)(2) |
| 32 | 7/2/24 | 72 | Response to Trans Union's opposed motion for leave to file replies | 1.08 |
| 33 | 9/10/24 | 85 | Motion to compel discovery from Experian | 1.08 3.01(g) 3.01(g)(2) 3.01(g)(3) |
| 34 | 9/10/24 | 86 | Motion to compel discovery responses from Trans Union | 1.08 3.01(g) 3.01(g)(2) 3.01(g)(3) |
| 35 | 9/10/24 | 87 | Statement of material facts in support of motion to compel | 1.08 3.01(g) |
| 36 | 9/10/24 | 88 | Motion for a status conference | 1.08 3.01(g) 3.01(g)(2) 3.01(g)(3) Fed. R. Civ. P. 11(a) |
| 37 | 9/11/24 | 89 | Motion to compel depositions | 1.08 3.01(g) 3.01(g)(2) |

| | Date | D# | Paper/Proceeding | Rule Violated |
|---|---|---|---|---|
| 38 | 9/11/24 | 90 | Statement in support of claim against Trans Union | 1.08<br>3.01(g) |
| | **10/29/24** | **104** | **Order to show cause why sanctions should not be imposed due to repeated violations of the Local Rules and the standing order, denying six of the plaintiff's motions without prejudice for violating the Local Rules, the standing order, or both, and directing the plaintiff to resources for pro se litigants** | |
| | **11/4/24** | **105** | **Order scheduling a show-cause hearing to address, among other issues, repeated violations of the Local Rules and the standing order** | |
| 39 | 12/4/24 | 112 | Show-cause hearing addressing, among other issues, repeated violations of the Local Rules and the standing order | 3.07(a)<br>4.03(g)<br>5.03(c)(1)<br>5.01(c)(5)<br>5.03(c)(7)<br>5.03(c)(8)<br>5.03(c)(9) |
| 40 | 12/4/24 | 107 | Response to order to show cause | 1.08 |
| 41 | 12/5/24 | 108 | Amended response to order to show cause | 1.08 |
| 42 | 12/5/24 | 109 | Memorandum of law in support of amended response to order to show cause | 1.08<br>4.03(g) |
| 43 | 12/5/24 | 110 | Motion to dismiss defendant's motion for judgment, impose monetary sanctions, and exclude improperly introduced deposition transcripts | 1.08<br>1.09<br>3.01(g)<br>3.01(e) |
| 44 | 12/5/24 | 111 | Memorandum of law in support of motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude improperly introduced deposition transcripts | 1.08<br>3.01(a) |
| 45 | 12/10/24 | 118 | Emergency motion for leave to file supplemental exhibits and correct citations after deadline | 1.08<br>3.01(g)<br>3.01(e) |
| 46 | 12/10/24 | 119 | Memorandum of law in support of motion for leave to file supplemental exhibits, correct citations, strike the defendants' pleadings, and invoke local rule emergency exemption | 1.08<br>3.01(a) |

Attachment A | 4 of 5

|  | Date | D# | Paper/Proceeding | Rule Violated |
|---|---|---|---|---|
| 47 | 12/17/24 | 123 | Reply in support of motion for default judgment, adverse inferences, monetary sanctions, and to strike improperly introduced deposition testimony | 1.08<br>3.01(d) |
| 48 | 12/17/24 | 124 | Declaration in support of motion to strike depositions, impose sanctions, and for adverse inference | 1.08 |
| 49 | 12/17/24 | 125 | Notice of exhibit | 1.08 |
| 50 | 12/18/24 | 127 | Reply to Experian's motion to strike plaintiff's "emergency" motion for leave to file supplemental exhibits and correct citations after deadline | 1.08 |
| 51 | 12/18/24 | 128 | Notice of errata | 1.08 |
| 52 | 12/19/24 | 129 | Notice of withdrawal of previously filed reply | 1.08<br>3.01(g) |
| 53 | 12/19/24 | 130 | Motion for leave to file a reply in support of motion for default judgment, adverse inferences, monetary sanctions, and to strike improperly introduced deposition transcripts | 1.08<br>3.01(d)<br>3.01(g)(2) |
| 54 | 12/26/24 | 132 | Notice of clarification regarding Local Rule 3.01(d) | 3.01(d) |
| 55 | 4/8/25 | 137 | Notice of filing exhibit 1 to plaintiff's supplemental notice | Fed. R. Civ. P. 11(a) |
| 56 | 4/14/25 | 143 | Motion to strike defendants' pleadings and depositions pursuant to Fed. R. Civ. P. 60(d)(3) for fraud upon the court and request for adverse inferences, sanctions, and terminating relief | 3.01(g)<br>3.01(g)(2) |
| 57 | 4/17/25 | 147 | Motion to compel disclosure of judicial records, sealed entries, and internal communications under the court's inherent power and the public access doctrine | 3.01(g)<br>3.01(g)(2) |
| 58 | 4/17/25 | 148 | Motion for judicial reassignment due to evidence of bias, procedural irregularities, and ongoing due process violations | 3.01(g)<br>3.01(g)(2) |

## Attachment B

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 1 | 4/10/24 | 20 | Response to the defendants' joint motion for judgment on the pleadings with memorandum of law | *Smith v. Equifax Info. Servs., LLC*, 998 F. Supp. 2d 765 (M.D. Fla. 2023) | | This case does not exist. |
| 2 | 4/10/24 | 20 | Response to the defendants' joint motion for judgment on the pleadings with memorandum of law | *Doe v. Trans Union LLC*, No-20-1234 (11th Cir. 2023) | | This case does not exist. |
| 3 | 4/19/24 | 24 | Motion for summary judgment | *Doe v. Equifax*, Case No. 4:21-cv-9012 (S.D. Fla. 2024) | | This case does not exist. |
| 4 | 4/19/24 | 24 | Motion for summary judgment | *Smith v. Trans Union LLC*, Case No. 2:22-cv-1234 (M.D. Fla. 2023) | | This case does not exist. |
| 5 | 4/19/24 | 24 | Motion for summary judgment | *Jones v. Experian Info. Sols., Inc.*, Case No. 3:23-cv-5678 (M.D. Fla. 2023) | | This case does not exist. |
| 6 | 5/2/24 | 29 | Motion to compel mediation | Local Rule 9.05(b) | | This rule does not exist. |
| 7 | 5/8/24 | 33 | Opposition to Experian's motion to seal and memorandum of law | *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) | "The party seeking to overcome this presumption [of public access] must demonstrate that sealing is essential to preserve higher values and is narrowly tailored to serve that interest." | This case does not discuss sealing and contains no such holding. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 8 | 5/8/24 | 33 | Opposition to Experian's motion to seal and memorandum of law | *Chicago Tribune Co. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) | "The Eleventh Circuit has repeatedly affirmed that the public has a presumptive right to access judicial documents because 'such access enhances the quality and safeguards the integrity of the factfinding process.'" | This case includes no such quotation. |
| 9 | 5/17/24 | 39 | Motion to amend case management report | Local Rule 16.3 | | This rule does not exist. |
| 5/20/24 | | 41 | Trans Union's response to the motion for summary judgment pointing out the plaintiff's citations to non-existent cases | | | |
| 5/20/24 | | 42 | Experian's response to the motion for summary judgment pointing out the plaintiff's citations to non-existent cases | | | |
| 10 | 5/21/24 | 45 | Amended motion to amend case management report | Local Rule 16.3 | | This rule does not exist. |
| 11 | 5/21/24 | 46 | Amended motion for summary judgment to add new evidence | *Doe v. Equifax*, Case No. 4:21-cv-9012 (S.D. Fla. 2024) | | This case does not exist. |
| 12 | 5/21/24 | 46 | Amended motion for summary judgment to add new evidence | *Smith v. Trans Union LLC*, Case No. 2:22-cv-1234 (M.D. Fla. 2023) | | This case does not exist. |
| 13 | 5/21/24 | 46 | Amended motion for summary judgment to add new evidence | *Jones v. Experian Info. Sols., Inc.*, Case No. 3:23-cv-5678 (M.D. Fla. 2023) | | This case does not exist. |
| 14 | 5/23/24 | 50 | Opposition to Trans Union's motion for judicial notice | *Jones v. Experian Information Solutions, Inc.*, 676 F.3d 1257 (11th Cir. 2012) | | This case does not exist. |
| 15 | 5/23/24 | 50 | Opposition to Trans Union's motion for judicial notice | *Fair Isaac Corp. v. FTC*, 708 F.3d 136 (2d Cir. 2013) | | This case does not exist. |

Attachment B | 2 of 34

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 16 | 5/29/24 | 52 | Memorandum of law in support of the plaintiff's motion for summary judgment | *Saenz v. Trans Union LLC*, 621 F. App'x 923 (11th Cir. 2015) | | This case does not exist. |
| 17 | 5/29/24 | 52 | Memorandum of law in support of the plaintiff's motion for summary judgment | *Dennis v. Trans Union LLC*, 911 F.3d 674, 682 (11th Cir. 2018) | | This case does not exist. |
| 18 | 5/29/24 | 52 | Memorandum of law in support of the plaintiff's motion for summary judgment | *Ventura v. Trans Union, LLC*, 406 F. Supp. 3d 1253 (S.D. Fla. 2019) | | This case does not exist. |
| 19 | 5/29/24 | 52 | Memorandum of law in support of the plaintiff's motion for summary judgment | *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200 (11th Cir. 2019) | "These injunctions are supported by case law: … *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200 (11th Cir. 2019)." | This case does not discuss an injunction and contains no support for an injunction. |
| 20 | 5/29/24 | 52 | Memorandum of law in support of the plaintiff's motion for summary judgment | *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 1260 (11th Cir. 2018) | | This case does not exist. |
| 21 | 5/29/24 | 52 | Memorandum of law in support of the plaintiff's motion for summary judgment | *Osborne v. Equifax Information Services LLC*, 432 F. Supp. 3d 1308 (N.D. Ga. 2020) | | This case does not exist. |
| 22 | 5/29/24 | 52 | Memorandum of law in support of the plaintiff's motion for summary judgment | *J.V. v. Collecto, Inc.*, 938 F.3d 1327 (11th Cir. 2019) | | This case does not exist. |
| 23 | 5/29/24 | 52 | Memorandum of law in support of the plaintiff's motion for summary judgment | *Rea v. Federated Fin. Corp. of Am.*, No. 8:09-cv-2569, 2010 WL 11568022 (M.D. Fla. Sept. 29, 2010) | | This case does not exist. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 24 | 5/29/24 | 52 | Memorandum of law in support of the plaintiff's motion for summary judgment | *Philbin v. Trans Union LLC,* 101 F.3d 957 (3d Cir. 1996) | "Even minor inaccuracies in credit reports can have a significant impact on consumers, underscoring the importance of the 'maximum possible accuracy' standard." | This case contains no such holding. |
| 25 | 5/29/24 | 52 | Memorandum of law in support of the plaintiff's motion for summary judgment | *In re Equifax, Inc., Customer Data Security Breach Litigation,* 348 F. Supp. 3d 1330 (N.D. Ga. 2018) | | This case does not exist. |
| 26 | 5/29/24 | 52 | Memorandum of law in support of the plaintiff's motion for summary judgment | *Swope v. Credit Bureau of Jacksonville,* No. 3:05-cv-953-J-32TEM (M.D. Fla. Sept. 14, 2007) | | This case does not exist. |
| 27 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Cortez v. Trans Union, LLC,* No. CIV .A. 05-5684, 2007 WL 2702945 (E.D. Pa. Sept. 13, 2007) | "This argument aligns with the principle of maximum accuracy mandated by the FCRA, as established in *Cortez v. Trans Union, LLC,* No. CIV .A. 05-5684, 2007 WL 2702945 (E.D. Pa. Sept. 13, 2007), aff'd, 617 F.3d 688 (3d Cir. 2010)." (emphasis omitted) | This case contains no such holding. |

Attachment B | 4 of 34

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 28 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Saenz v. Trans Union, LLC,* 656 F.3d 679 (9th Cir. 2011) | | This case does not exist. |
| 29 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Apodaca v. Discover Financial Services,* 417 F. Supp. 3d 1244 (D.N.M. 2019) | | This case does not exist. |
| 30 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Guimond v. Trans Union Credit Information Co.* (5th Cir. 1991) | | This case does not exist. |
| 31 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Federal Trade Commission v. Lifelock, Inc.,* 877 F.3d 420 (9th Cir. 2017) | | This case does not exist. |
| 32 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Pinghua Lei v. Desjardins Financial Group,* No. 19 CV 4152, 2021 WL 302688 (N.D. Ill. Jan. 29, 2021) | | This case does not exist. |
| 33 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Tomlinson v. Equifax, Info. Servs., LLC,* 585 F. Supp. 2d 1324 (S.D. Fla. 2008) | | This case does not exist. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 34 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Fair v. Experian Info. Solutions, Inc.*, 768 F.3d 1169 (11th Cir. 2014) | | This case does not exist. |
| 35 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Santos v. Experian Information Solutions, Inc.*, No. 22-11187 (11th Cir. 2024) | "Furthermore, recent cases from the Eleventh Circuit and Florida, such as *Santos v. Experian Information Solutions, Inc.* …, reiterate the importance of thorough reinvestigations (Santos No. 22-11187 (11th Cir. 2024)[.]" | This case does not discuss reinvestigations. |
| 36 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) | "Establishes the FCRA's duty for CRAs to ensure accuracy, even if errors originate from furnishers." | This case contains no such holding. |
| 37 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Levine v. World Financial Network National Bank*, 554 F.3d 1314 (11th Cir. 2009) | "Emphasizes the importance of accuracy and the potential harm to consumers from credit report errors." | This case contains no such holding. |
| 38 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Harrison v. Equifax*, 915 F.3d 1259 (11th Cir. 2019) | | This case does not exist. |

Attachment B | 6 of 34

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 39 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Hughes v. Experian*, No. 6:15-cv-1459 (M.D. Fla. Oct. 25, 2016) | | This case does not exist. |
| 40 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001) | "Highlights the deterrent role of punitive damages in protecting customers." | This case does not discuss punitive damages as a deterrent. |
| 41 | 5/29/24 | 53 | Reply to the defendant's opposition and in support of the plaintiff's motion for summary judgment with memorandum of law | *Ramirez v. Trans Union LLC,* 141 S. Ct. 2190 (2021) | "Punitive Damages: $50,000 from each Defendant, totaling $100,000, to punish and deter their egregious conduct. This amount reflects the reprehensibility of their actions, the need for deterrence given their substantial resources, and is consistent with punitive damages awarded in comparable cases like *Ramirez v. Trans Union LLC, 141 S. Ct. 2190 (2021).*" (emphasis omitted) | This statement misrepresents the punitive damages awarded by the jury and later reduced by the Circuit court. The Supreme Court's opinion addresses standing, not the amount of punitive damages awarded below.<br><br>Note: The plaintiff cites an incorrect case name. The correct case name is *Trans Union LLC v. Ramirez.* |

|  | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 42 | 5/29/24 | 55 | Motion to show cause why Experian should not be sanctioned for failure to comply with discovery and for leave to file amended motion for summary judgment | *Clark v. Equifax Information Services LLC*, 2018 WL 1144925 (M.D. Fla. Mar. 2, 2018) |  | This case does not exist. |
| 43 | 5/29/24 | 55 | Motion to show cause why Experian should not be sanctioned for failure to comply with discovery and for leave to file amended motion for summary judgment | *Smith v. Trans Union LLC*, No. 3:22-cv-00123-J-32JRK (M.D. Fla. Jan. 10, 2023) |  | This case does not exist. |
| 44 | 5/29/24 | 55 | Motion to show cause why Experian should not be sanctioned for failure to comply with discovery and for leave to file amended motion for summary judgment | *Covington v. Int'l Ass'n of Approved Basketball Officials, Inc.*, 710 F.3d 114 (3d Cir. 2013) | "Upheld sanctions for failure to comply with discovery orders." | This case does not discuss sanctions. |
| 45 | 5/29/24 | 55 | Motion to show cause why Experian should not be sanctioned for failure to comply with discovery and for leave to file amended motion for summary judgment | *In re: National Prescription Opiate Litigation*, 956 F.3d 834 (6th Cir. 2020) | "Affirmed sanctions for discovery violations, including incomplete and misleading documents." | This case does not discuss sanctions. Note: The plaintiff cites the wrong first page of the case. The correct page number is 838. |
| 46 | 5/29/24 | 55 | Motion to show cause why Experian should not be sanctioned for failure to comply with discovery and for leave to file amended motion for summary judgment | *Gilead Sciences, Inc. v. Merck & Co., Inc.*, 2016 WL 146129 (N.D. Cal. Jan. 13, 2016) | "Imposed sanctions for failure to preserve electronically stored information (ESI)." | This case does not discuss sanctions or ESI. Note: The plaintiff cites the wrong WestLaw number. The correct number is 2016 WL 146574. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 47 | 5/29/24 | 55 | Motion to show cause why Experian should not be sanctioned for failure to comply with discovery and for leave to file amended motion for summary judgment | *Aquasciences Int'l, Inc. v. Wandy*, 867 F.3d 1363 (Fed. Cir. 2017) | | This case does not exist. |
| 48 | 5/29/24 | 55 | Motion to show cause why Experian should not be sanctioned for failure to comply with discovery and for leave to file amended motion for summary judgment | *Smith v. Duffey*, 576 F.3d 336 (7th Cir. 2009) | "The court allowed an amendment even after the statute of limitations had expired, as the amendment related back to the original claims and did not prejudice the defendant." | This case does not discuss amendment or a statute of limitations. |
| 49 | 5/29/24 | 57 | Motion to strike Experian's motion for judgment on the pleadings | *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990) | "As established in *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542 (11th Cir. 1990), a release cannot bar future claims arising from distinct facts or events." | This case does not discuss a release and contains no such holding. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 50 | 5/29/24 | 57 | Motion to strike Experian's motion for judgment on the pleadings | *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) | "In *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997), the court held that a motion for summary judgment is premature when discovery is incomplete, especially if the discovery sought is relevant to the issues raised in the motion." | This case contains no such holding. |
| 51 | 5/29/24 | 57 | Motion to strike Experian's motion for judgment on the pleadings | *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) | "The failure to timely respond to discovery requests violates the Federal Rule of Civil Procedure 33(b)(2), which requires responses within 30 days after being served." | This case does not discuss Rule 33, Federal Rules of Civil Procedure. |
| 52 | 5/29/24 | 57 | Motion to strike Experian's motion for judgment on the pleadings | *U.S. v. Certain Real Property*, 920 F.2d 788, 793 (11th Cir. 1991) | "Plaintiff requests that the Court compel Experian to provide full and complete responses to the discovery requests immediately[.]" | This case does not discuss discovery, and the plaintiff cites a fictitious pinpoint cite. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 53 | 5/29/24 | 57 | Motion to strike Experian's motion for judgment on the pleadings | Local Rule 1.08(a) | "This lack of diligence in following proper procedures demonstrates unreasonableness, as per … Local Rule 1.08(a) (requiring factual detail in pleadings)."<br><br>"Experian's removal of Plaintiff's accurate address and failure to verify the incorrect address constitutes negligent reporting and a failure to maintain accurate records as required under the FCRA … and Local Rule 1.08(a)." | Local Rule 1.08(a) governs typography and does not require factual detail in pleadings or the maintenance of accurate records. |
| 54 | 5/29/24 | 57 | Motion to strike Experian's motion for judgment on the pleadings | Local Rule 3.01(c) | "Local Rule 3.01(c) further provides that the Court may strike down any motion that is frivolous, untimely, or fails to comply with the Local Rules." | Local Rule 3.01(c) governs a party's time to respond to a motion and does not provide the Court authority to "strike" a frivolous or untimely motion. |

Attachment B | 11 of 34

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 55 | 6/17/24 | 62 | Motion to compel compliance with a subpoena and for sanctions | Rule 45(e), Federal Rules of Civil Procedure | "Rule 45(e) of the Federal Rules of Civil Procedure: 'The court for the district where compliance is required … may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.'" (alteration in original) | This quotation is from Rule 45(g), Federal Rules of Civil Procedure. |
| 56 | 6/17/24 | 63 | Response in opposition to Experian's motion for judgment on the pleadings | *Chastain v. Equifax, Inc.*, 478 F. App'x 614, 617 (11th Cir. 2012) | | This case does not exist. |
| 57 | 6/17/24 | 63 | Response in opposition to Experian's motion for judgment on the pleadings | *Pinder v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986) | "This case is more analogous to *Pinder v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986), where the Court held that a release in a prior settlement did not bar a subsequent claim under the FCRA for new and distinct violations." | This case does not discuss a release and contains no such holding. Note: The plaintiff cites an incorrect case name. The correct case name is *Pinner v. Schmidt*. |
| 58 | 6/24/24 | 66 | Rebuttal to Trans Union's motion for judgment on the pleadings | *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 1227 (11th Cir. 1998) | | This case does not exist. |

Attachment B | 12 of 34

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 59 | 6/24/24 | 66 | Rebuttal to Trans Union's motion for judgment on the pleadings | *Cheeks v. Equifax Information Services LLC*, No.1:21-CV-00262-JPB, 2022 WL 4335897 (N.D. Ga. Sept. 19, 2022) | | This case does not exist. |
| 60 | 6/24/24 | 66 | Rebuttal to Trans Union's motion for judgment on the pleadings | *Saenz v. Trans Union, LLC*, 621 F. App'x 921, 924 (11th Cir. 2015) | | This case does not exist. |
| 61 | 6/24/24 | 66 | Rebuttal to Trans Union's motion for judgment on the pleadings | *Collins v. Experian Information Solutions, Inc.*, 775 F.3d 1330 (11th Cir. 2015) | "As held in *Collins v. Experian Information Solutions, Inc., 775 F.3d 1330 (11th Cir. 2015)*, reporting inaccurate information after notice of a dispute violates the FCRA." | This case contains no such holding. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 62 | 6/24/24 | 66 | Rebuttal to Trans Union's motion for judgment on the pleadings | *Losch v. Nationstar Mortgage LLC*, 995 F.3d 937 (11th Cir. 2021) | "Trans Unions' deletion of Plaintiff's bankruptcy on December 2, 2022 … followed by its reinsertion on December 7, 2022 … without notice, constitutes a procedural inaccuracy in violation of 15 U.S.C. § 1681i(a)(5)(B)(ii). This violation is a per se inaccuracy as established in *Losch v. Nationstar Mortgage LLC, 995 F.3d 937 (11th Cir. 2021)*." | This case contains no such holding. |
| 63 | 6/24/24 | 66 | Rebuttal to Trans Union's motion for judgment on the pleadings | *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) | "Taking judicial notice of the bankruptcy case would prejudice the Plaintiff by allowing the Defendant to exploit an irrelevant fact to prematurely terminate valid FCRA claims, as cautioned against in United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994)[.]" | This case contains no such holding. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 64 | 6/24/24 | 66 | Rebuttal to Trans Union's motion for judgment on the pleadings | *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir. 1999) | "Taking judicial notice of the bankruptcy case would prejudice the Plaintiff by allowing the Defendant to exploit an irrelevant fact to prematurely terminate valid FCRA claims, as cautioned against in … Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1281 (11th Cir. 1999)." | This case contains no such holding. |
| 65 | 6/24/24 | 67 | Response in opposition to Trans Union's motion to take judicial notice | *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) | "Further, the Eleventh Circuit has consistently held that judicial notice should not be taken of facts that could 'improperly interfere with the jury's fact-finding function.'" | This case contains no such quotation. |
| 66 | 6/26/24 | 69 | Opposition to the defendants' motion to stay | *In re: Seroquel Products Liability Litigation*, 244 F.3d 1333 (11th Cir. 2001) | | This case does not exist. |
| | 6/26/24 | 71 | Trans Union's motion for leave to reply pointing out the plaintiff's citations to non-existent cases and other falsities | | | |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 67 | 9/10/24 | 85 | Motion to compel discovery from Experian | *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 180–82 (N.D. Ga. 2017) | "See e.g., Liguria Foods, Inc. v. Griffith Labs., Inc., 320 F.R.D. 168, 180–82 (N.D. Ga. 2017) (collecting cases and noting that the Eleventh Circuit 'has consistently held that boilerplate objections, particularly those based on vagueness, overbreadth, or undue burden, are improper.')." | This case contains no such quotation.<br><br>Note: The plaintiff cites the incorrect court. The correct court is the Northern District of Iowa. |
| 68 | 9/10/24 | 85 | Motion to compel discovery from Experian | Local Rule 3.01(g) | "A separate Statement of Material Facts is filed concurrently with this Motion, pursuant to Local Rule 3.01(g)." (emphasis omitted) | Local Rule 3.01(g) governs conferral and does not discuss or require a separate statement of material facts. |
| 69 | 9/10/24 | 85 | Motion to compel discovery from Experian | *S.E.C. v. Merida Capital Partners, LLC*, 2020 WL 1182633, at *2 (S.D. Fla. Mar. 12, 2020) | | This case does not exist. |
| 70 | 9/10/24 | 85 | Motion to compel discovery from Experian | *Cacique, Inc. v. Tropical Cheese Indus., Inc.*, 2008 WL 4936553, at *3 (S.D. Fla. Nov. 14, 2008) | | This case does not exist. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 71 | 9/10/24 | 85 | Motion to compel discovery from Experian | *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 WL 502767, at *1 (D. Colo. Feb. 9, 2010) | "Boilerplate objections that a request is 'overly broad, unduly burdensome, and oppressive' are meaningless unless the responding party explains its objections." | This case contains no such quotation.<br><br>Note: The plaintiff cites an incorrect WestLaw number and date. The correct citation is *Cartel Asset Mgmt. v. Ocwen Fin. Grp.*, No. 01–cv–01644–REB–CBS, 2010 WL 502721 (D. Colo. Feb. 8, 2010). |
| 72 | 9/10/24 | 85 | Motion to compel discovery from Experian | *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007) | "Generalized objections such as 'overbroad, unduly burdensome, and oppressive' are inadequate unless the responding party states the specific grounds for the objection." | This case contains no such quotation. |
| 73 | 9/10/24 | 85 | Motion to compel discovery from Experian | *Ladner v. Ocwen Loan Servicing, LLC*, 2019 WL 1323088, at *2 (M.D. Fla. Mar. 22, 2019) | | This case does not exist. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 74 | 9/10/24 | 86 | Motion to compel discovery from Trans Union | *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) | "The Eleventh Circuit has consistently held that the scope of discovery under the Federal Rules is broad and that 'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.'" <br><br> "As the Eleventh Circuit has stated in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), 'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.'" (emphasis omitted) | The plaintiff misrepresents this case as an "Eleventh Circuit" case. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 75 | 9/11/24 | 89 | Motion to compel depositions | *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) | "The deposition of a high-ranking corporate official is eminently permissible, indeed essential, when the official possesses 'unique personal knowledge of discoverable information.'" | This case contains no such quotation and no such holding. |
| 76 | 9/11/24 | 89 | Motion to compel depositions | *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987) | "The Eleventh Circuit has unequivocally held that 'top level executives are not immune from deposition.'" | This case contains no such quotation and no such holding. And the plaintiff misrepresents this case as an "Eleventh Circuit" case. |
| 77 | 9/11/24 | 89 | Motion to compel depositions | *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007) | "As the Supreme Court held in *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007), the reasonableness of procedures and whether the agency followed them are quintessential questions for the jury." | This case contains no such holding. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 78 | 9/11/24 | 89 | Motion to compel depositions | *Yohay v. Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987) | "The Fourth Circuit in *Yohay v. Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987), defined 'reckless disregard' as sufficient to establish willful noncompliance." | This case does not discuss "reckless" or "reckless disregard." |
| | 9/25/24 | 99 | The defendants' response to the motion to compel depositions pointing out the plaintiff's falsities | | | |
| | 11/4/24 | 105 | Order scheduling the latest show-cause hearing and pointing out the plaintiff's citations to non-existent cases and other falsities | | | |
| | 12/4/24 | 112 | Show-cause hearing addressing, among other issues, the plaintiff's citations to non-existent cases and other falsities | | | |
| 79 | 12/4/24 | 107 | Response to the order to show cause | *Losch v. Nationstar Mortgage LLC*, 995 F.3d 937, 944 (11th Cir. 2021) | "In Losch v. Nationstar Mortgage LLC, 995 F.3d 937, 944 (11th Cir. 2021), the Eleventh Circuit emphasized that the reinsertion of previously deleted information without notification constitutes a violation of the FCRA." (emphasis omitted) | This case does not discuss "reinsertion." |
| 80 | 12/4/24 | 107 | Response to the order to the show cause | *Cheeks v. Equifax Information Services LLC*, No.1:21-CV-00262-JPB, 2022 WL 4335897 (N.D. Ga. Sept. 19, 2022) | | This case does not exist. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 81 | 12/4/24 | 107 | Response to the order to show cause | *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980) | "'The standard for evaluating pro se pleadings is less stringent, and courts must provide reasonable opportunities for pro se litigants to correct procedural deficiencies before imposing sanctions or dismissal.'" | This case contains no such quotation. |
| 82 | 12/4/24 | 107 | Response to the order to show cause | *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) | "'A pro se litigant is entitled to the court's special consideration to ensure that they are not prejudiced by their lack of legal expertise.'" | This case contains no such quotation and no such holding. |
| 83 | 12/5/24 | 108 | Amended response to the order to show cause | *Jones v. Experian Information Solutions, Inc.*, 982 F.3d 983 (7th Cir. 2020) | | This case does not exist. |
| 84 | 12/5/24 | 108 | Amended response to the order to show cause | *Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171, 1172 (5th Cir. 1977) | "Discovery violations warrant sanctions or exclusion of evidence." | This case does discuss "exclusion of evidence." |
| 85 | 12/5/24 | 109 | Memorandum of law in support of amended response to the order to show cause | *Jones v. Experian Information Solutions, Inc.*, 982 F.3d 983 (7th Cir. 2020) | | This case does not exist. |

|  | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 86 | 12/5/24 | 109 | Memorandum of law in support of amended response to the order to show cause | *Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171, 1172 (5th Cir. 1977) | "Courts have held that discovery violations warrant sanctions or exclusion of evidence." | This case does not discuss "exclusion of evidence." |
| 87 | 12/5/24 | 110 | Motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude a deposition transcript | *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1185 (11th Cir. 2013) | "Monetary sanctions are appropriate for discovery abuses that prejudice the opposing party." | This case does not discuss sanctions and contains no such holding. |
| 88 | 12/5/24 | 110 | Motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude a deposition transcript | *Jones v. United Space Alliance, LLC*, 170 F. App'x 52, 58 (11th Cir. 2006) | "Discovery violations that result in prejudice justify exclusion of evidence." | This case contains no such holding. |
| 89 | 12/5/24 | 110 | Motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude a deposition transcript | *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 127 F.R.D. 224, 229 (S.D, Fla. 1989) | "Evidence obtained or used in violation of discovery rules must be excluded to prevent prejudice." | This case contains no such holding. |
| 90 | 12/5/24 | 110 | Motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude a deposition transcript | *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–66 (1980) | "Sanctions are appropriate where discovery violations obstruct justice." | This case contains no such holding. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 91 | 12/5/24 | 110 | Motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude a deposition transcript | *Tannenbaum v. United States*, 148 F.3d 1262 (1998) | "Courts must ensure that litigants, especially pro se litigants, are not prejudiced by procedural deficiencies beyond their control." | This case contains no such holding. |
| 92 | 12/5/24 | 110 | Motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude a deposition transcript | Local Rule 3.01(j) | "Pursuant to Local Rule 3.01(j), Plaintiff requests a hearing[.]" | Local Rule 3.01(j) governs proposed orders and does not discuss hearings. |
| 93 | 12/5/24 | 111 | Memorandum of law in support of the motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude a deposition transcript | *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 127 F.R.D. 224, 229 (S.D. Fla. 1989) | "Evidence obtained or used in violation of discovery rules must be excluded to prevent prejudice." | This case contains no such holding. |
| 94 | 12/5/24 | 111 | Memorandum of law in support of the motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude a deposition transcript | *Jones v. United Space Alliance, LLC*, 170 F. App'x 52, 58 (11th Cir. 2006) | "Discovery violations that result in prejudice justify exclusion of evidence." | This case contains no such holding. |
| 95 | 12/5/24 | 111 | Memorandum of law in support of the motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude a deposition transcript | *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-66 (1980) | "Sanctions are appropriate where discovery violations obstruct justice." | This case contains no such holding. |

|  | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 96 | 12/5/24 | 111 | Memorandum of law in support of the motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude a deposition transcript | *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1185 (11th Cir. 2013) | "Monetary sanctions are appropriate for discovery abuses that prejudice the opposing party." | This case does not discuss sanctions and contains no such holding. |
| 97 | 12/5/24 | 111 | Memorandum of law in support of the motion to dismiss the defendant's motion for judgment, impose monetary sanctions, and exclude a deposition transcript | Local Rule 3.01(j) | "Grant a hearing pursuant to Local Rule 3.01(j) to address these issues." | Local Rule 3.01(j) governs proposed orders and does not discuss hearings. |
| 98 | 12/10/24 | 118 | Emergency motion for leave to file supplemental exhibits and correct citations after the deadline | Local Rule 3.01(g)(3) | "This motion complies with Local Rule 3.01(g)(3), which allows the Court to waive the conferral requirement in exigent circumstances." | Local Rule 3.01(g)(3) governs unavailability of the opposing party for conferral and contains no authority for the Court to waive the conferral requirement in exigent circumstances. |
| 99 | 12/10/24 | 118 | Emergency motion for leave to file supplemental exhibits and correct citations after the deadline | *Losch v. Nationstar Mortgage LLC*, 995 F.3d 937 (11th Cir. 2021) | "This Eleventh Circuit decision emphasizes the necessity of procedural compliance regarding notifications under the FCRA, particularly regarding reinsertion notifications under 15 U.S.C. § 1681i(a)(5)(B)." (emphasis omitted) | This case does not discuss "reinsertion." |

Attachment B | 24 of 34

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 100 | 12/10/24 | 118 | Emergency motion for leave to file supplemental exhibits and correct citations after the deadline | *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) | "Courts have consistently held that repeated procedural violations and withholding of discovery materials justify adverse inferences."<br><br>"Plaintiff reiterates the request for an adverse inference under the Court's inherent authority." | This case does not discuss "adverse inferences" and contains no such holding. |
| 101 | 12/10/24 | 118 | Emergency motion for leave to file supplemental exhibits and correct citations after the deadline | *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) | "Courts have consistently held that repeated procedural violations and withholding of discovery materials justify adverse inferences." | This case does not discuss "adverse inferences" and contains no such holding. |
| 102 | 12/10/24 | 119 | Memorandum of law in support of the motion for exempt to file supplemental exhibits, correct citations, strike defendants' pleadings, and invoke local rule emergency exception | Local Rule 3.01(g)(3) | "Local Rule 3.01(g)(3) provides that the Court may exempt a movant from the conferral requirement if it determines that exigent circumstances exist." | Local Rule 3.01(g)(3) governs unavailability of the opposing party for conferral and contains no authority for the Court to waive the conferral requirement in exigent circumstances. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 103 | 12/17/24 | 123 | Reply in support of the motion for default judgment, adverse inferences, monetary sanctions, and to strike a deposition transcript | *Malautea v. Suzuki Motor Corp.*, 148 F.3d 1236 (11th Cir. 1998) | | This case does not exist. |
| 104 | 12/17/24 | 123 | Reply in support of the motion for default judgment, adverse inferences, monetary sanctions, and to strike a deposition transcript | *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994) | "See *BankAtlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1049 (11th Cir. 1994)* (excluding evidence where failure to comply with rules caused unfair prejudice)." | This case contains no such holding. |
| 105 | 12/18/24 | 128 | Notice of errata | Local Rule 3.01(i) | "Pursuant to Local Rule 3.01(i), the Court may permit corrections of clerical errors or inadvertent mistakes when brought to its attention promptly." (emphasis omitted) | Local Rule 3.01(i) governs notices of supplemental authority and contains no authority for "corrections of clerical errors or inadvertent mistakes." |
| 106 | 12/19/24 | 130 | Motion for leave to file a reply in support of motion for default judgment, adverse inferences, monetary sanctions, and to strike a deposition transcript | *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) | "Courts may impose sanctions, including default judgment, for procedural misconduct that prejudices the opposing party[.]" | This case contains no such holding. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 107 | 12/19/24 | 130 | Motion for leave to file a reply in support of the motion for default judgment, adverse inferences, monetary sanctions, and to strike a deposition transcript | *Haines v. Kerner*, 404 U.S. 519 (1972) | "Courts must ensure procedural rules do not preclude substantive evidence, particularly when litigants act in good faith." | This case contains no such holding. |
| 108 | 12/26/24 | 132 | Notice of clarification regarding Local Rule 3.01(d) | *Haines v. Kerner*, 404 U.S. 519 (1972) | "The Court has broad discretion to relax procedural rules for pro se litigants to ensure access to justice[.]" | This case contains no such holding. |
| 109 | 4/8/25 | 136 | Supplemental notice and submission of new evidence in support of motion for sanctions | Local Rule 3.01(g)(1) | "COMES NOW, Plaintiff, Eliott Williamson, appearing pro se, and respectfully files this Supplemental Notice pursuant to … Local Rule 3.01(g)(1)." (emphasis omitted) | Local Rule 3.01(g)(1) governs conferral and contains no authority for filing a supplemental notice. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 110 | 4/8/25 | 136 | Supplemental notice and submission of new evidence in support of motion for sanctions | *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) | "The Supreme Court has held that attorneys have a duty of candor, and when they omit material facts or make misleading representations to gain litigation advantage, it constitutes a fraud upon the court." (emphasis omitted) | This case contains no such holding. |
| 111 | 4/9/25 | 138 | Second supplemental notice and submission of new evidence in support of motion for sanctions | Local Rule 3.01(g)(1) | "This submission is made pursuant to … Local Rule 3.01(g)(1) of the Middle District of Florida." (emphasis omitted) | Local Rule 3.01(g)(1) governs conferral and contains no authority for filing a supplemental notice or submitting new evidence. |
| 112 | 4/9/25 | 138 | Second supplemental notice and submission of new evidence in support of motion for sanctions | Fed. R. Civ. P. 83(b) | "Defendants' conduct violates the following rules … Fed. R. Civ. P. 83(b) – Violation of local rule compliance and professional responsibility." (emphasis omitted) | Rule 83(b), Federal Rules of Civil Procedure, governs procedure when there is no controlling law and does not discuss violations of Local Rules or professional responsibility. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 113 | 4/14/25 | 143 | Motion to strike defendants' pleadings and depositions pursuant to Fed. R. Civ. P. 60(d)(3) for fraud upon the court and request for adverse inferences, sanctions, and terminating relief | Local rule 3.01(g) | "Multiple motions went unanswered for over five months, violating … Local Rule 3.01(g)." | Local Rule 3.01(g) governs conferral and establishes no time frame for rulings on motions. |
| 114 | 4/14/25 | 143 | Motion to strike defendants' pleadings and depositions pursuant to Fed. R. Civ. P. 60(d)(3) for fraud upon the court and request for adverse inferences, sanctions, and terminating relief | *Gleason v. Jandrucko*, 860 F.2d 556 (2d Cir. 1988) | "Courts have granted similar relief in: … Gleason v. Jandrucko, 860 F.2d 556 (2d Cir. 1988)[.]" (emphasis omitted) | The court in this case did not grant similar relief to the relief requested by the plaintiff. The district court dismissed the case after denying the plaintiff's Rule 60(b) motion to set aside judgment for fraud upon the court, and the Second Circuit affirmed. |
| 115 | 4/17/25 | 146 | Response in opposition to Experian's motion to strike plaintiff's Rule 60(d)(3) motion | *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) | "'A motion alleging fraud on the court is not subject to time limits and is not barred by the ordinary principles of finality.'" | This case contains no such quotation. |
| 116 | 4/17/25 | 146 | Response in opposition to Experian's motion to strike plaintiff's Rule 60(d)(3) motion | *Hazel-Atlas*, 322 U.S. at 246 | "'A Rule 60(d)(3) motion may be considered even when the case is otherwise closed or stayed, because the motion seeks to protect the court itself.'" | This case contains no such quotation. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 117 | 4/17/25 | 146 | Response in opposition to Experian's motion to strike plaintiff's Rule 60(d)(3) motion | *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) | "'A fraud upon the court is conduct that prevents the court from performing its impartial task of adjudging cases.'" (emphasis omitted) | This case contains no such quotation. |
| 118 | 4/17/25 | 146 | Response in opposition to Experian's motion to strike plaintiff's Rule 60(d)(3) motion | Local Rule 3.01(g)(1) | "Experian further claims Plaintiff violated Local Rule 3.01(g) by not conferring prior to filing. However, the rule explicitly exempts motions for: Injunctive relief, Summary judgment, and Class certification, '... or any motion involving constitutional rights or sanctions.' — *M.D. Fla. L.R. 3.01(g)(1)*[.]" (emphasis and bullet points omitted; alteration in original) | Local Rule 3.01(g)(1) exempts from conferral motions for injunctive relief, motions for judgment on the pleadings, motions for summary judgment, and motions to certify a class, and the rule contains no such quotation. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 119 | 4/17/25 | 147 | Motion to compel disclosure of judicial records, sealed entries, and internal communications under the court's inherent power and the public access doctrine | Fed. R. Civ. P. 83(b) | "Prohibits unauthorized modifications of substantive rights through informal court practices." | Rule 83(b), Federal Rules of Civil Procedure, governs procedure when there is no controlling law and does not discuss substantive rights or "informal" court practices. |
| 120 | 4/17/25 | 147 | Motion to compel disclosure of judicial records, sealed entries, and internal communications under the court's inherent power and the public access doctrine | Local Rule 1.11(c) | "Requires public filing unless sealing is justified by statute, rule, or court order." | Local Rule 1.11(c) governs the procedure for supporting or opposing a motion to seal and does not discuss justification for sealing. |
| 121 | 4/17/25 | 147 | Motion to compel disclosure of judicial records, sealed entries, and internal communications under the court's inherent power and the public access doctrine | Local Rule 1.01(b) | "Governs administrative conduct of the docket and ensures clarity and accessibility." | Local Rule 1.10(b) governs suspension of the application of a Local Rule and does not discuss an "administrative docket," clarity, or accessibility. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 122 | 4/17/25 | 147 | Motion to compel disclosure of judicial records, sealed entries, and internal communications under the court's inherent power and the public access doctrine | *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) | "Public Access Doctrine, which guarantees public and party access to judicial proceedings and documents unless compelling reasons justify sealing. See *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978)[.]" (emphasis omitted) | This case contains no such holding. |
| 123 | 4/17/25 | 147 | Motion to compel disclosure of judicial records, sealed entries, and internal communications under the court's inherent power and the public access doctrine | *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) | "Public Access Doctrine, which guarantees public and party access to judicial proceedings and documents unless compelling reasons justify sealing. See … *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995)." (emphasis omitted) | This case contains no such holding. |
| 124 | 4/17/25 | 148 | Motion for judicial reassignment due to evidence of bias, procedural irregularities, and ongoing due process violations | *United States v. Sony Records, Inc.*, 829 F. Supp. 57, 65 (S.D.N.Y. 1993) | | This case does not exist. |

Attachment B | 32 of 34

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 125 | 4/18/25 | 149 | Judicial reminder and notice of pending motions affecting constitutional rights | Local Rule 3.01(g)(1) | "COMES NOW, Plaintiff Eliott Williamson, pro se, and respectfully files this Judicial Reminder pursuant to … Middle District of Florida Local Rule 3.01(g)(1) to request urgent attention to outstanding motions impacting Plaintiff's constitutional rights and the integrity of this proceeding." (emphasis omitted) | Local Rule 3.01(g)(1) governs conferral and contains no authority for filing "judicial reminders." |
| 126 | 4/18/25 | 149 | Judicial reminder and notice of pending motions affecting constitutional rights | Local Rule 3.01(g)(1) | "Requires conferral except for motions involving constitutional rights, sanctions, or judicial conduct." | Local Rule 3.01(g)(1) exempts from conferral only motions for injunctive relief, motions for judgment on the pleadings, motions for summary judgment, and motions to certify a class. |

| | Date | D# | Paper | Purported Citation | Statement or quotation | Falsity |
|---|---|---|---|---|---|---|
| 127 | 4/18/25 | 149 | Judicial reminder and notice of pending motions affecting constitutional rights | Federal Rule of Civil Procedure 60(d)(3) | "Permits relief from judgment for fraud on the court, independent of time restrictions or procedural stays." | Rule 60(d)(3), Federal Rules of Civil Procedure, permits a court to set aside a judgment for fraud on the court but contains no language stating that relief is "independent of time restrictions or procedural stays." |